**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FRATELLI COSULICH UNIPESSOAL,** | ) | |
| **S.A. f/k/a FRATELLI COSULICH** | ) | |
| **CONSULTADORIA E PARTICIPACOES** | ) | |
| **UNIPESSOAL, LDA,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 13-00545-KD-C** |
| **v.** | ) | |
| | ) | |
| **SPECIALTY FUELS BUNKERING, LLC,** | ) | |
| **and SPECIALTY FUELS BTU, LLC,** | ) | |
|     **Defendants.** | ) | |

**ORDER**

This action is before the Court on the Second Motion for Leave to File Second Amended Complaint ("Second Motion to Amend") (Doc. 27) filed by Plaintiff Fratelli Cosulich Unipessoal S.A. f/k/a Fratelli Cosulich Consultadoria e Participacoes Unipessoal, LDA ("Cosulich"), the objections to the motion (Doc. 28) filed by Defendant Specialty Fuels BTU, LLC ("BTU"), and Cosulich's reply to those objections (Doc. 29). Upon consideration, the Court finds that the Second Motion to Amend (Doc. 27) is due to be **GRANTED**.

By way of background, the Court previously denied Cosulich's first Motion for Leave to Amend Complaint (Doc. 10), determining for several reasons that both the original Complaint (Doc. 1) and Cosulich's first proposed amended complaint (Doc. 10, Ex. 1) failed to allege sufficient facts demonstrating the requisite diversity of citizenship by which this Court could exercise subject matter jurisdiction over this action under 28 U.S.C. § 1332, the only basis for jurisdiction Cosulich asserts. (Doc. 15). Cosulich was directed to file a second motion to amend its complaint, attaching a second proposed amended complaint "that properly alleges sufficient facts to establish diversity jurisdiction, or some other basis for subject-matter jurisdiction, over this action." (Id. at 7). After being granted several extensions, Cosulich

timely filed its Second Motion to Amend (Doc. 27), which is fully briefed (Docs. 28, 29) and ripe for adjudication.

## I. Subject Matter Jurisdiction

"[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction," Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001), the Court must first determine whether Cosulich has pled sufficient facts in its Second Motion to Amend and attached second proposed amended complaint to establish subject matter jurisdiction over this action. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) ("It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist."); Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) ("The pleader must affirmatively allege facts demonstrating the existence of jurisdiction…").

Cosulich continues to assert diversity under § 1332 as the sole basis for the Court's jurisdiction over this action. Regarding its own citizenship, Cosulich first alleges that it is a "Sociedade Anomima," or "S.A.," organized under Portuguese law, and that it should be treated as a corporation for purposes of diversity. Cosulich represents that, under Portuguese law, the designation "S.A." signifies an entity as a "stock corporation company," which is distinct from the designation "Sociedade Comandita por Accoes," or a "partnership by shares." Cosulich cites to a number of characteristics that it claims make it equivalent to a corporation under United States law, such as: its ownership is represented by shares; shareholders are free from personal liability and their liability is limited to the shares to which they have subscribed; it operates under Articles of Association establishing a Board of Directors; its name must be registered with the National Registration of Portuguese Companies and be followed by the designation "S.A." If Cosulich is treated as a corporation for purposes of diversity, then it would be a citizen of Portugal, as it was organized under Portuguese law and has its principal

place of business there.   See (Doc. 27-1 at 1-2, ¶ 1; Doc. 27 at 5-7); § 1332(c)(1) ( "For the purposes of this section…a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…").

Cosulich asserts in the alternative that, if it is to be treated as an unincorporated entity for purposes of diversity, then it is a citizen of Italy, as its sole shareholder is Fratelli Cosulich S.p.A., an Italian corporation with its principal place of business in Italy.[1]   See (Doc. 27 at 7-8); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 860 (11th Cir. 2000) ("[B]ecause unincorporated entities are attributed the citizenship of their owners, that rule would mean that Geo Med is an Argentinian entity because its owner, Alpert, is Argentinian." (citation and footnote omitted)).

For purposes of establishing diversity jurisdiction, the Court need not determine whether Cosulich is to be treated as a corporation (and thus a citizen of Portugal) or unincorporated entity (and thus a citizen of Italy), as complete diversity of citizenship has been alleged regardless, see infra.

"It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought…It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing…"   Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570-71 (2004) (quotation omitted).   The original Complaint asserted claims against two Defendants, BTU and Specialty Fuels Bunkering, LLC ("Bunkering"), both Alabama limited liability companies (LLCs).   (Doc. 1).   For purposes of assessing diversity of citizenship, "a limited liability company is a citizen

---

[1] Cosulich provides no explanation for why an Italian S.p.A. should be treated as a corporation for purposes of diversity.   However, no Defendant has challenged Cosulich's factual allegations regarding diversity; therefore, the Court will accept them as true.

of any state of which a member of the company is a citizen." <u>Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.</u>, 374 F.3d 1020, 1022-23 (11th Cir. 2004) (*per curiam*). <u>Accord Mallory & Evans Contractors & Engineers, LLC v. Tuskegee Univ.</u>, 663 F.3d 1304, 1305 (11th Cir. 2011) (*per curiam*).

Cosulich's proposed second amended complaint ("the PSAC") (Docs. 27-1 – 27-3) alleges that, at the time this action was commenced on November 6, 2013, BTU had one member, F. Javier Brito ("Brito"), a natural person who is a citizen of the United States and domiciled in Alabama. (Doc. 27-1 at 5, ¶ 3). Bunkering is alleged to have had two members at the time this action was commenced: Brito and CCC Holdings, LLC, an Alabama LLC whose sole member is Scott Cleveland, a United States citizen domiciled in Alabama. (<u>Id.</u> at 3-4, ¶ 2). Thus, at the time this action commenced, BTU and Bunkering were citizens of Alabama. <u>McCormick v. Aderholt</u>, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (*per curiam*) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." (citations, quotations, and footnote omitted)). Based on these allegations, unchallenged by the Defendants, complete diversity of citizenship existed at the time this action commenced between Cosulich (a citizen of either Portugal or Italy) and Defendants Bunkering and BTU (both Alabama citizens). <u>See, e.g.</u>, <u>Vermeulen v. Renault, U.S.A., Inc.</u>, 985 F.2d 1534, 1542 (11th Cir. 1993) ("For diversity jurisdiction under 28 U.S.C. § 1332, all defendants must be diverse from all plaintiffs."). As the Court has already determined (<u>see</u> Doc. 15 at 2, n.2), the original Complaint also alleged sufficient facts establishing that the amount in controversy in this action exceeds $75,000, exclusive of interests and costs. Thus, Cosulich's allegations establish that the Court had diversity jurisdiction over this action at the time it was commenced. <u>See</u> § 1332(a)(2) ("The

district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State..."); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

The PSAC retains BTU as a defendant, deletes Bunkering as a defendant, and adds Brito and Bunkers International Corporation ("BIC") as defendants. As has been established, see supra, Plaintiff Cosulich is a citizen of either Portugal or Italy, while BTU and Brito are citizens of Alabama. BIC is alleged to be incorporated under the laws of Florida and to have its principal place of business in Florida, thus making BIC a Florida citizen. See § 1332(c)(1). As such, complete diversity of citizenship exists on the face of the PSAC. Moreover, the PSAC also alleges sufficient facts establishing that the amount in controversy in this action exceeds $75,000, exclusive of interests and costs. Based on these allegations, unchallenged by the Defendants, the PSAC does not deprive the Court of diversity jurisdiction under § 1332(a)(2).

## II.    Propriety of Amendment under Fed. R. Civ. P. 15(a)

Federal Rule of Civil Procedure 15(a) provides, in relevant part, as follows:

(1) **Amending as a Matter of Course**. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) **Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Bunkering has not filed an answer or a motion under Federal Rule of Civil Procedure 12(b), (e), or (f). As such, Cosulich can still amend its Complaint once as a matter of course against Bunkering. See Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc. Civ. § 1481 (3d ed.) ("[I]f only some defendants file responsive pleadings, plaintiff still should be governed by the 21-day amendment period in Rule 15(a)(1)(A) for pleading amendments regarding the nonresponding defendants.") (addressing Rule 15(a)(1) after 2009 amendment); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1291 (11th Cir. 2007) ("If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." (citing Brewer–Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000), abrogated on other grounds, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)) (addressing Rule 15(a)(1) prior to 2009 amendment). As the PSAC deletes Bunkering as a defendant entirely in this action, Bunkering is no longer a party to this action.[2] See Williams, 477 F.3d at 1292 n.6

---

[2]    Cosulich has not lost its right to amend as a matter of course against Bunkering by filing a motion for leave to amend. See Miller & Kane, 6 Fed. Prac. & Proc. Civ. § 1482 (3d ed.) ("If a party erroneously moves for leave to amend before the time for amending as of course has expired, several courts have held that the amendment should not be handled as a matter addressed to the court's discretion but should be allowed as of right. This seems sound since in most cases, a party who makes a motion to amend before the period for amendment as of course has expired does so inadvertently and treating the amendment as if it had been made under Rule 15(a)(1) avoids penalizing the pleader for not understanding the rule." (citing cases) (footnote omitted)).

    Alternatively, the Court treats the Second Motion to Amend as a Notice of Dismissal against Bunkering under Federal Rule of Civil Procedure 41(a)(1)(A)(i), which allows a plaintiff to "dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Such a notice may be filed against one defendant without dismissing the entire action. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) ("Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant…"); Plains Growers, Inc. By & Through Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250, 255 (5th Cir. 1973); Oswalt v. Scripto, Inc., 616 F.2d 191, 194-95 (5th Cir. 1980). "The dismissal is effective immediately upon the filing of a written notice of dismissal, and no subsequent court order is

("When the plaintiff has the right to file an amended complaint *as a matter of course,* []the plain language of Rule 15(a) shows that the court lacks the discretion to reject the amended complaint based on its alleged futility.").

However, BTU filed its Answer on January 7, 2014; thus, the time for Cosulich to amend its Complaint against BTU once as a matter of course has expired.  See Fed. R. Civ. P. 15(a)(1)(B).

> Once the time period for amending a pleading as of right has expired, Rule 15(a) of the Federal Rules of Civil Procedure, provides amendment "only by leave of court or by written consent of the adverse party." The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. Rule 15(a), however, limits the court's discretion by mandating that "leave shall be freely given when justice so requires." See Halliburton & Assoc. v. Henderson, Few & Co., 774 F.2d 441 (11th Cir. 1985). There must be a substantial reason to deny a motion to amend. Id. Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

Laurie v. Ala. Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001) (*per curiam*).

Initially, the Court notes that the PSAC is a "shotgun pleading," as it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . ."  Wagner v.

---

required." Matthews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990) (*per curiam*). Moreover, a formal notice under Rule 41(a)(1)(A)(i) need not be filed to effect such a dismissal. See id. ("The fact that a notice of dismissal is styled 'motion to dismiss' rather than 'notice of dismissal' is without consequence."). Cf. Oswalt, 616 F.2d at 195 ("Nor are we deterred from finding a stipulated dismissal by the fact that there is no formal stipulation of dismissal entered in the record by the Oswalts or Scripto. This court approved a district court's finding that an oral dismissal of claims against defendants in the course of a trial was sufficient to constitute a dismissal under Rule 41(a)(1) even though there was no formal dismissal or stipulation filed with the clerk. Harkless v. Sweeny Independent School District of Sweeny, Texas, 554 F.2d 1353, 1360 (5th Cir. 1977), aff'g. in part, 388 F. Supp. 738, 749 (S.D. Tex.1975). The Tenth Circuit in Pipeliners Local[ Union No. 798, Tulsa, Oklahoma v. Ellerd, 503 F.2d 1193 (10th Cir. 1974)] has found that a verbal stipulation of dismissal in open court sufficed for the purposes of Rule 41(a)(1)(ii)…To require the filing of a formal document would be to countenance a mechanistic view of the Federal Rules of Civil Procedure and exalt form over substance.").

First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006). The Eleventh Circuit greatly disfavors such pleadings, see, e.g., id. (" '[S]hotgun pleadings wreak havoc on the judicial system.' Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001). Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently."), and has stated that, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte.*" Ferrell v. Durbin, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (*per curiam*) (citing Wagner, 464 F.3d at 1280). However, having reviewed the PSAC, the Court does not find it confusing on its face and will not *sua sponte* deny amendment on this basis.

BTU has objected to the Second Motion to Amend on several grounds (see Doc. 28), with Cosulich filing responses (Doc. 29) to those objections. The Court will address each objection in turn.

### a.    Bankruptcy Stay

BTU has alerted the Court to the fact that Bunkering is the debtor in a Chapter 7 bankruptcy case currently pending in the United States Bankruptcy Court for the Southern District of Alabama, Case # 13-04041 (filed 11/14/13).[3]   While Bunkering is no longer a party to this action, see *supra*, BTU asserts that the automatic stay currently enjoyed by Bunkering under 11 U.S.C. § 362(a) due to its pending bankruptcy action should be extended to cover this entire action and thus bar amendment of Cosulich's complaint.   As grounds, BTU asserts that the PSAC "is rife with statements alleging that Bunkering and BTU 'are one and the same' corporate entity, and that Bunkering and BTU are merely alter egos of Brito…"   (Doc. 28 at 5). As such, BTU continues, "[g]iven that Bunkering, BTU, and Brito are 'inextricably intertwined,'

---

[3]  The Court notes that Bunkering filed a Chapter 11 petition in the same bankruptcy court on August 5, 2013 (Case # 13-02717).   The Chapter 11 case was dismissed on August 9, 2013, and closed on March 10, 2014.

the claims in the [PSAC] cannot be resolved with Bunkering's involvement in the instant litigation." (Id. at 7). BTU argues that the automatic stay precludes Bunkering from participating in the discovery process and that, "[g]iven the nature of the proposed Amended Complaint's allegations, []Cosulich cannot in good faith assert that discovery from Bunkering is unnecessary to resolve the claims against BTU, Brito, and [BIC]." Id.

Though the Eleventh Circuit has yet to directly address the issue, "[a]s a general proposition, the automatic stay provisions of § 362(a) do not operate to stay claims against non-debtor defendants." Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc., Civil Action No. 09-0249-WS-N, 2009 WL 2413664, at *1 & n.4 (S.D. Ala. Aug. 3, 2009) (Steele, J.) (citing Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 789 (8th Cir. 2009) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); In re TXNB Internal Case, 483 F.3d 292, 301 (5th Cir. 2007) ("Section 362(a) ... does not apply, however, to actions not directed against the debtor or property of the debtor."); In re Philadelphia Newspapers, LLC, 407 B.R. 606, 2009 WL 1911785, at *6 (E.D. Pa. July 2, 2009) ("[w]hile the scope of the automatic stay is broad, it stays action only against the debtor"); In re Sunbeam Securities Litigation, 261 B.R. 534, 536 (S.D. Fla. 2001) ("The law makes clear ... that the automatic stay provisions of section 362(a) generally are not available to third-party non-debtors.")).[4]

---

[4] Accord McCartney v. Integra Nat. Bank N., 106 F.3d 506, 509-10 (3d Cir. 1997) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.' As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor…[A] primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to insure that creditors obtain the protection they sought and received when they required a third party to guaranty the debt." (citations and quotations omitted)); Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009) ("As a general rule, the automatic stay protects _only_ the debtor, property of the debtor or property of the estate. The stay does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or

> This prohibition, however, has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties. Relying on <u>A.H. Robins Co., Inc. v. Piccinin</u>, 788 F.2d 994, 999 (4th Cir.), <u>cert. denied</u>, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986), these courts have extended the automatic stay to nonbankrupt codefendants in "unusual circumstances." As the case law demonstrates, courts have found "unusual circumstances" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." <u>Id.</u> at 999 (relying on both the automatic stay provision and the bankruptcy court's equitable powers under 11 U.S.C. § 105 to enjoin actions against nondebtor codefendants in the Dalkon Shield products liability litigation because of the potential impact on the estate and the availability of insurance proceeds to satisfy the claims); <u>see also</u> <u>In re American Film Technologies, Inc.</u>, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (staying prosecution of wrongful discharge claims against former and present directors of debtor corporation because of debtor's indemnification obligations and its possible exposure to collateral estoppel prejudice); <u>In re Family Health Services, Inc.</u>, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) (staying collection actions against nondebtor members of debtor HMO because judgments against nondebtors would trigger claims for indemnification from the debtor HMO).

<u>McCartney v. Integra Nat. Bank N.</u>, 106 F.3d 506, 510 (3d Cir. 1997).

The Eighth Circuit, discussing <u>McCartney</u> and <u>A.H. Robins</u>, has held: "The unusual circumstances in which the bankruptcy court can stay cases against non-debtors are rare." <u>Ritchie Capital Mgmt., L.L.C. v. Jeffries</u>, 653 F.3d 755, 762 (8th Cir. 2011) (citing <u>Reliant Energy Serv., Inc. v. Enron Canada Corp.</u>, 349 F.3d 816, 825 (5th Cir. 2003)). "[T]he automatic stay will apply to non-debtors only when 'a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.' " <u>Id.</u> at 763 (quoting

---

other non-debtor parties liable on the debts of the debtor." (internal citations and quotation omitted)); <u>Kreisler v. Goldberg</u>, 478 F.3d 209, 213 (4th Cir. 2007) (" 'Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants.' " (quoting <u>A.H. Robins Co., Inc. v. Piccinin</u>, 788 F.2d 994, 999 (4th Cir. 1986))); <u>In re Jefferson Cnty., Ala.</u>, 491 B.R. 277, 284 (Bankr. N.D. Ala. 2013) ("Generally, the automatic stay of § 362(a)(1) applies only to certain actions taken or not taken with respect to a debtor, and not with respect to such action or inaction affecting other parties." (citing <u>A.H. Robins</u>, 788 F.2d at 999)).

Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287–88 (2d Cir. 2003) (listing actions as debtor's

guarantors or insurers as examples of permissible orders of stay against non-debtors)).

More recently, the Eighth Circuit has explained that, "where the proposed action involves

only third parties and no estate property, and where an 'unusual-circumstances' 'exception'

would be needed to justify extension of the automatic stay, [11 U.S.C. ]§ 105 is the more

appropriate source of authority for assessing the propriety of a stay" and that "a stay issued

pursuant to that section should be treated as an injunction."  In re Panther Mountain Land Dev.,

LLC, 686 F.3d 916, 926 (8th Cir. 2012).[5]  Section 105 " 'permits the bankruptcy court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." ' "  Id. (quoting In re Titan Energy, Inc., 837 F.2d 325, 328 n.5 (8th Cir. 1988) (quoting

11 U.S.C. § 105)).   The Eighth Circuit explained this rationale as follows:

> Our cases stating (but not holding) that the automatic stay may be extended in
> "unusual circumstances" trace their authority to A.H. Robins…In A.H. Robins,
> the Fourth Circuit discussed different possible sources of authority to stay actions
> against non-debtors including §§ 362(a)(1), (a)(3) and 105. The district court in
> that case, however, had actually "applied the test for a grant of preliminary
> injunctive relief," A.H. Robins, 788 F.2d at 1008. And the Fourth Circuit held,
> "we have no difficulty in sustaining the grant of a preliminary injunction herein."
> Id.
>
> We see little reason to expand A.H. Robins beyond this holding or to complicate
> the analysis of stays against non-debtors by taking them outside the framework of
> § 105 and "the usual rules governing the issuance of injunctions." [EEOC v. ]Rath
> Packing Co., 787 F.2d [318,] 325[ (8th Cir. 1986)]; C.H. Robinson Co.[ v. Paris
> & Sons, Inc.], 180 F. Supp. 2d [1002,] 1015[ (N.D. Iowa 2001)] (setting forth an
> in-depth summary of bankruptcy stays against non-debtors and concluding that §
> 105 should govern in such situations and should rest upon standards and
> procedures for injunctive relief). The procedures and standards applicable

---

[5] This statement is arguably *dicta*, as the Eighth Circuit stated beforehand: "[W]e do not read the
bankruptcy court's oral or written orders as purporting to exercise the broader equitable powers of 11
U.S.C. § 105. As such, we are presented with no opportunity to review an application of § 105."  In re
Panther Mountain, 686 F.3d at 926.

pursuant to § 105 as referenced in <u>Rath Packing</u> provide a more than adequate framework for assessing the propriety of stays in "unusual" situations.

As noted by the court in <u>C.H. Robinson Co.</u>, several courts have interpreted <u>A.H. Robins</u> as approving of injunctive relief pursuant to § 105 but not calling for the automatic extension of § 362 stays against third parties. <u>See</u> <u>C.H. Robinson</u>, 180 F. Supp. 2d at 1011 (listing authority and stating, "several subsequent courts to apply <u>A.H. Robins Co.</u> have held that extensions of the automatic stay to preclude the continuation of a suit against a non-debtor are essentially a utilization of the bankruptcy court's equity jurisdiction under section 105 to issue an injunction extending the stay"). This interpretation is consistent with the legislative history and purpose of the automatic stay: to prevent a race by creditors, provide an orderly liquidation involving equal treatment of creditors, and provide breathing room for the debtor free from actions against the debtor and its assets. <u>Id.</u> at 1016 (discussing H.R. Rep. No. 95–595, 95th Cong., 2d Sess. 340 (1978), U.S.C.C.A.N. 1978, 6297 & S. Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), U.S.C.C.A.N. 1978, 5787, 5840–41 (additional citations omitted)). Where suit is brought against a third party rather than against the debtor or the debtor's property, § 105 and the usual standards, procedures, and burdens of proof for injunctive relief remain available. It is difficult to see how the suspension of these standards and the automatic application of a § 362 stay in a suit against a non-debtor furthers the legislative goals. Moreover, use of § 105 rather than a tortured expansion of the automatic stay avoids problematic notice issues (albeit issues not raised in the present case), namely, parties inadvertently violating an automatic stay and exposing themselves to potential sanctions due to a lack of notice concerning its applicability towards a third party.

<u>Id.</u> at 927.

The Court agrees with the above-stated analysis from <u>In re Panther Mountain</u> and finds it applicable to this action, where the debtor, Bunkering, is (no longer) a defendant and its estate property is not at issue. BTU has not conducted the rigorous analysis required to show entitlement to injunctive relief, and the Court declines to make those arguments for it.

Additionally, this Court agrees with <u>Public Pension Fund Group v. KV Pharmaceutical Co.</u>, No. 4:08-CV-1859 CEJ, 2013 WL 1293816 (E.D. Mo. Mar. 28, 2013), which, after conducting a review of relevant case law, found that the bankruptcy court, rather than the district

court, was the appropriate place for determining whether "unusual circumstances" warranted extending the automatic stay to non-debtors. Public Pension relied in particular on Lee v. RCN Corporation, No. 03 C 5866, 2004 WL 2108577 (N.D. Ill. Sept. 20, 2004), in which the district court stated:

> The weight of authority holds that a request to extend a § 362 stay is to be filed in the court where the bankruptcy action is pending, and further, that the request is to be filed by the debtor. See, e.g., In re. Richard B. Vance & Co., 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003); In re. Lennington, 286 B.R. 672, 674 (Bankr. C.D. Ill. 2001); C.H. Robinson Co. v. Paris & Sons, Inc., 180 F. Supp. 2d 1002, 1015 (N.D. Iowa 2001). This makes sense. The bankruptcy court is in the best position to evaluate the effect on the bankruptcy estate, if any, of litigation against a nondebtor co-defendant. And the request should be filed by the debtor because it is the debtor's interests, not those of the nondebtor co-defendants, that are intended to be protected by an extension of the stay.

2004 WL 2108577, at *1.

The Court agrees that, at least in the first instance, the bankruptcy court is the appropriate venue for determining whether Bunkering's automatic stay should apply to this action, and that it is Bunkering who should protect its own interests (should it determine any are at risk) by making such a motion. This determination is bolstered by the fact that Bunkering has never appeared in this action to speak for itself, and by Cosulich's representations (see Doc. 29 at 12-15) that neither Bunkering nor BTU have sought an extension of the automatic stay in a case pending before another judge of this district and to which both are parties.[6]

---

[6] Another district judge of this district has previously applied the "unusual circumstances" test to extend the automatic stay to nondebtor parties. See Gulfmark Offshore, 2009 WL 2413664 (Steele, J.). Whether the district court was the appropriate place to make such a determination does not appear to have been put at issue in Gulfmark Offshore, however. Moreover, Gulfmark Offshore determined, in the alternative, that a stay was appropriate pursuant to the court's inherent power to manage its docket (discussed *infra*).

Both Gulfmark Offshore and Rivera-Olivera v. Antares Oil Servs., 482 B.R. 44, 46 (D.P.R. 2012), a case on which BTU primarily relies in arguing for application of Bunkering's automatic stay, are also distinguishable from the present action because each, in finding "unusual circumstances" justifying extension of the automatic stay, relied primarily on the fact that the nondebtor defendants were entitled to

BTU's primary concern regarding extension of the automatic stay is that a number of Cosulich's claims are based on its allegations that BTU and/or Brito are "alter egos" of the bankrupt Bunkering. The PSAC claims that "[a]llegations herein relating to Bunkering are for informational and contextual purposes only and are not to be construed by anyone as an attempt to state claims against it…" (Doc. 27-1 at 4-5, ¶ 2). However, Count Ten of the PSAC is entitled "Piercing Corporate Veil" and "demands judgment against" Brito and BTU "for all liabilities of Specialty Fuels Bunkering, LLC…" (Doc. 27-2 at 20; Doc. 27-3 at 1-2).

Nevertheless, In re Panther Mountain also rejected argument that claims of alter ego against a debtor company warranted extension of the automatic stay:

> Regarding the alter-ego or "integrally related entity" argument, we believe the present situation falls short of the type of "rare" and unusual circumstance that might justify extension of the automatic stay. Here, not only are the Improvement Districts legal entities separate from the Debtor, they are not controlled by the Debtor…The Kellermans, rather than the Debtor, control the Improvement Districts, and the Kellermans are not the bankrupt debtors. The estate simply does not "own" the Improvement Districts.
>
> For whatever beneficial reasons, the Kellermans elected to create the Debtor as a corporate entity and then, acting through the Debtor, created the Improvement Districts. See Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 729 (8th Cir. 2008) ("As a corporate matter, [owning property in a separate corporation] is a common practice, considered wise from a business perspective."). We do not simply brush

---

indemnity from the debtor. Under A.H. Robins, "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case" is a prime example of "unusual circumstances" justifying extending the automatic stay to non-debtors. 788 F.2d at 999. Accord Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007). See also In re Jefferson Cnty., Ala., 491 B.R. 277, 288 (Bankr. N.D. Ala. 2013) ("A.H. Robins is a seminal case that established the 'unusual circumstances' exception allowing courts to stay a proceeding against a non-debtor defendant when that defendant is indemnified by the debtor."); Gulfmark Offshore, 2009 WL 2413664, at *2 ("[F]ederal courts have extended the automatic stay's protections to non-debtors who would be entitled to indemnity from the debtor in the event of a judgment against them."). "Since A.H. Robins…courts have clarified that absolute indemnity is not required for the unusual circumstances exception to apply" and "the 'possibility' of a right of indemnification is sufficient." In re Jefferson Cnty., 491 B.R. at 288-89 (citing cases). BTU does not argue that any of the Defendants in this action are due indemnity from Bunkering.

aside the consequences flowing from these decisions or the separate identities of the individual commissioners, the Debtor, and the Improvement Districts merely because we are able to trace a chain of ownership and control back to the same natural persons who now seek to disregard their earlier decisions. See, e.g., Lovett v. Gen. Motors Corp., 975 F.2d 518, 521–22 (8th Cir. 1992) (rejecting an individual's attempt to have a court treat his own corporation as an alter ego so that he could assert antitrust standing).

Further, even if it were somehow possible to characterize the Improvement Districts as subsidiary corporations wholly owned by the Debtor (or owned by an asset of the Debtor), the automatic stay does not, in general, apply to actions against parties who enjoy factual or legal relationships with a debtor, such as a debtor's wholly owned subsidiaries. See, e.g., Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007) (rejecting application of the automatic stay to an action against the assets of a wholly owned subsidiary and stating, "It is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity.... [A] judgment against [a debtor's wholly owned subsidiary] imposes no obligations or liability on [the debtor, who] therefore cannot be accurately described as the real-party defendant in the suit...."[7]); Croyden Assoc's[ v. Alleco, Inc.], 969 F.2d [675,] 677[ (8th Cir. 1992)] (finding no unusual circumstances and stating, "We are persuaded that the stay required by section 362 should extend only to claims against [the party in bankruptcy], and that the stay is not available to nonbankrupt codefendants ... even if they are in a similar legal or factual nexus with the debtor." (internal citations and quotation marks omitted)).

686 F.3d at 922-23.[8]

---

[7] The Court notes that Kreisler cited Maryland state law in making these statements. However, In re Panther Mountain appears to apply them more generally.

[8] The opposite conclusion appears to have been reached in In re Fiddler's Creek, LLC, No. 9:10-BK-03846-ALP, 2010 WL 6618876 (Bankr. M.D. Fla. Sept. 15, 2010):

2. The automatic stay under section 362 of the Bankruptcy Code does not act as a stay against a creditor pursuing truly independent causes of action against the Debtors' officers, directors or shareholders. However, it is black letter law in Florida that seeking a determination that a shareholder is the "alter ego" of a corporation and therefore liable for the corporation's debts, or similarly seeking to pierce the corporate veil of a corporation to impose liability on the shareholder for the corporation's debts, is *not* an independent claim or cause of action. Rather, it is a means of imposing liability on the shareholder

Regardless of whether the automatic stay applies, however, a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 683 (1997). Accord Gulfmark Offshore, 2009 WL 2413664, at *3.

---

based on an underlying cause of action for which the corporation is liable, including tort liability or liability for breach of contract.

3. As a result, in order to succeed in respect of the Class Action Lawsuit, the Plaintiffs would first be required to first establish the Golf Club Debtors' alleged liability for breach of contract of the Golf Club Membership Agreements or civil conversion in connection with the Initiation Deposits before, and as a condition precedent to, pursuing the remedy of alter ego or veil piercing against Mr. Ferrao for those same damages.

4. Importantly, Mr. Ferrao is not a party to the Golf Club Membership Agreements and is not alleged to be a party to any other contract or agreement with the Plaintiffs or any Golf Club members. As such, the Court finds and concludes that the substantive claims in the Class Action Lawsuit are clearly causes of action against the Golf Club Debtors for allegedly breaching the Golf Club Membership Agreements and allegedly converting and improperly disbursing the Initiation Deposits in connection therewith. As a result, the commencement and the continued prosecution of the Class Action Lawsuit violates the automatic stay provisions of section 362 of the Bankruptcy Code.

2010 WL 6618876, at *2 (citations omitted). See also Pride Family Brands, Inc. v. Carls Patio, Inc., No. 12-21783-CIV, 2013 WL 4647216, at *6 (S.D. Fla. Aug. 29, 2013) ("Similarly, in In re Fiddler's Creek, LLC, Case No. 9:10–bk–03846–ALP, 2010 WL 6618876, at *1 (Bankr. M.D.Fla.2010), the plaintiffs initiated a post-bankruptcy, classaction lawsuit against an individual who the plaintiffs contended was the alter ego of the debtor corporate defendant. The court determined that because the corporate debtor was the real party in interest and that the plaintiffs' lawsuit was 'merely an attempt by Plaintiffs' counsel to re-assert claims that were raised pre-petition,' an extension of the automatic stay to the individual was appropriate. Id. at *3 n. 4. []In this case, the Plaintiff is not seeking to proceed in an action against an alter ego of the debtor-Defendants, or even against the officers and/or executives of those Defendants.").

Alabama law is identical to Florida law in this regard. See Ryals v. Lathan Co., Inc., 77 So. 3d 1175, 1179 (Ala. 2011) (" 'A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather is procedural. A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action such as a tort or breach of contract. It has been said that the alter ego doctrine is thus remedial, not defensive, in nature. One who seeks to disregard the corporate veil must show that the corporate form has been abused to the injury of a third party.' " (quoting 1 Fletcher, Cyclopedia Corporations § 41.10 (1990))); Ex parte Thorn, 788 So. 2d 140, 145 (Ala. 2000) ("[T]he piercing-the-corporate-veil doctrine is an equitable doctrine…However, that doctrine is not a claim; '[i]t merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation.' 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (perm. ed. rev. vol.1999).").

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance…[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.   Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."   Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).

In asserting that the automatic stay should extend to all claims in this action, BTU relies significantly on Peterson v. Avantair, Inc., No. 8:13-CV-1683-T-33EAJ, 2013 WL 4506414 (M.D. Fla. Aug. 23, 2013).   In Peterson, two former employees of a corporation filed suit against the corporation and several of its officers and managers, asserting claims under the Fair Labor Standards Act and the Florida Constitution against all defendants.   2013 WL 4506414, at *1.   The individual defendants subsequently notified the court that the corporation had filed for bankruptcy and requested a stay of the entire action in light of the bankruptcy filing.   Id.   The plaintiffs opposed a stay as to the individual defendants, arguing that no "unusual circumstances" under A.H. Robins justified extending the bankruptcy stay to non-debtors.   Id.   The Peterson court, however, noted: "Individual Defendants do not argue that Plaintiffs' claims against them should be stayed automatically as a result of the section 362 stay applicable to Avantair; rather, these Defendants argue that the Court's discretionary entry of a stay as to the non-debtor Defendants would promote judicial efficiency by avoiding duplicative discovery, multiple hearings and inconsistent results. The Court agrees."   Id. (citation and quotation omitted).

Noting its inherent power to manage its docket, including the incidental power to stay proceedings, as set forth in Landis, *supra*, the Peterson court determine that "a stay of this action is appropriate in order to avoid piecemeal litigation, as Plaintiffs' claims against all Defendants are comprised of common questions of law and fact more suitably resolved in a single proceeding." Id. at *2. The court further noted:

> As the Individual Defendants indicate in the Motion to Stay, the operative complaint contains no separate count against the Individual Defendants and does not seek any separate relief from the Individual Defendants. The sole basis, if any, for recovery from the Individual Defendants would be individual liability based on the very same facts alleged against Avantair. The same legal analysis under the FLSA would apply to both parties. The Court thus declines to permit this case to proceed between Plaintiffs and the Individual Defendants at this juncture.

Id. (citation and quotation omitted). Peterson is distinguishable from the instant action, as the debtor, Bunkering, is no longer a defendant in this action, see *supra*; the PSAC asserts no claims against Bunkering; and most of Cosulich's claims against Brito, BTU, and BCI are independent of any claim against Bunkering.

The Court is also not persuaded by BTU's conclusory assertions that Bunkering may be required to engage in discovery in this action but would be unable to do so because of the automatic stay, thus hampering the proceedings in this action. BTU has cited no authority to support this contention, and courts have found litigants to be entitled to conduct discovery from debtors when that discovery is related only to claims against non-debtors. See In re Miller, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001) ("In this case, Groner issued the subpoenas to Debtor in an effort to continue her prosecution of her claims against Henry, a non-debtor. Section 362(a) prohibits the commencement or continuation of an action against the debtor; to the extent that Groner was eliciting Debtor's testimony for purposes other than to continue the prosecution of her claims against Debtor, the proposed discovery did not violate the automatic stay, unless the

issuance of subpoenas itself constitutes 'issuance or employment of process' against Debtor or a 'judicial proceeding' against Debtor. If this were true, a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code. Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay."); Pride Family Brands, Inc. v. Carls Patio, Inc., No. 12-21783-CIV, 2013 WL 4647216, at *3 (S.D. Fla. Aug. 29, 2013) ("In this case, Defendant debtor contends that § 362 and the Court's Order staying this matter prohibit the Plaintiff from taking the deposition of one of the Defendant's employees, absent relief from this Court. Plaintiff counters that it is only seeking discovery in relation to its claims against the non-debtor Defendants, and not against the Carl's Patio Defendants and thus contends that the deposition should proceed…[T]he undersigned concludes that the deposition should proceed." (discussing In re Miller and similar cases) (footnote omitted)); Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 882 n.6 (E.D. Va. 2002) ("[T]he automatic stay, even if applicable here, would not operate to preclude AOL from obtaining information from [the debtor] pursuant to the rules pertaining to discovery against non-parties." (citing In re Miller and other cases)). But see In re Residential Capital, LLC, 480 B.R. 529, 536-37 (Bankr. S.D.N.Y. 2012) ("There is surprisingly little authority whether the automatic stay applies to discovery from a debtor in a third-party action in which the debtor is not a party. FHFA's argument is supported by the holding in Miller, 262 B.R. 499, where the Ninth Circuit Bankruptcy Appellate Panel concluded that the automatic stay does not apply to discovery from a debtor in a third-party action…The Debtors offered no support for their position that section 362(a) precludes discovery, erroneously relying on statements by this

Court in granting a preliminary injunction staying litigation against the Non–Debtor Affiliates. The Court accepts FHFA's argument that section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions. But the Court concludes that [11 U.S.C. ]section 105 provides the Court with the necessary authority to extend the protection of the automatic stay to discovery from the Debtors. On the evidentiary record here, the Court concludes that the Debtors have established that section 105 should be applied to limit or restrict third-party discovery from the Debtors absent further order of the Court.").

Finally, the Court rejects BTU's assertion (made briefly, in a footnote, with no citation to authority) that "the possibility of inconsistent findings by the fact finder in this case and in the bankruptcy proceeding" (Doc. 28 at 12 n.2) warrants a stay of this action. In sum, BTU has not demonstrated "a clear case of hardship or inequity in being required to go forward," at least at this juncture and to the extent BTU wishes to deny Cosulich the opportunity to amend its complaint to assert claims independent of Bunkering. See Landis, 299 U.S. at 255.

b.    **Futility**

1.    **Failure to Sufficiently Plead Claims**

BTU states that the PSAC should be denied as futile because "it cannot withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)…" (Doc. 28 at 8). Citing the general requirements of Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Federal Rules of Civil Procedure 8(a)(2) and 9(b),[9] BTU states:

_____

[9] "Fed. R. Civ. P. 9(b)'s heightened pleading standard…requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake…[P]ursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. The plaintiff must allege facts with respect to each defendant's participation in the fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (citations and quotations omitted).

The Amended Complaint is rife with bare "labels and conclusions" and woefully short on factual assertions. For example, Fratelli Cosulich's claims against BI[C] (which it seeks to now add as a new defendant) are based on nothing more than the blithe assertions that (1) BI[C] was the broker and exclusive agent for "Bunkering and BTU" and (2) BI[C] owed a fiduciary duty to Fratelli Cosulich based on a "special relationship." There are no actual facts offered to support either of these conclusions, or to explain precisely what Fratelli Cosulich means by "special relationship." These facts are essential given the claims of deceit and suppression in the Amended Complaint and the requirements of a special relationship in Code of Alabama, 1975, 6-5-102 and 6-5-104. Similarly the alter ego allegations require comprehensive and well-defined facts – not conclusory allegations.

(Doc. 28 at 9-10).

While the Court agrees that, on first blush, it appears that some claims may be subject to dismissal, BTU's cursory arguments fail to provide the Court any substantive reasoning or authority for denying any amendment as futile.

### 2. Necessary Party

BTU also claims that the PSAC should be denied as futile because it excludes Bunkering, a purported "necessary party."

Under [Federal ]Rule[ of Civil Procedure] 19, "[a] party is considered 'necessary' to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 847 (11th Cir. 1999). By the plain text of the rule, the three scenarios in which Rule 19(a) joinder of an absent party is necessary are as follows: (i) inability to grant complete relief to existing parties; (ii) a likelihood that the absent party's ability to protect its interest in the subject of the action will be impaired or impeded; or (iii) a substantial risk that an existing party will incur double, multiple, or otherwise inconsistent obligations because of the absent party's interest in the litigation. In determining whether joinder of the party in question is required under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control." Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1280 (11th Cir. 2003) (citations and internal quotation marks omitted).

Plains Southcap LLC v. City of Semmes, Ala., Civil Action No. 13-0409-WS-M, 2013 WL 4544318, at *2 (S.D. Ala. Aug. 28, 2013) (Steele, C.J.).    Moreover, Rule 19

> instructs that nonjoinder even of a required person does not always result in dismissal. Subdivision (a) opens by noting that it addresses joinder "if Feasible." Where joinder is not feasible, the question whether the action should proceed turns on the factors outlined in subdivision (b). The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that "[t]he factors for the court to consider include." Fed. Rule Civ. Proc. 19(b). The general direction is whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Ibid.* The design of the Rule, then, indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations. This is also consistent with the fact that the determination of who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes. See, e.g., Illinois Brick Co. v. Illinois, 431 U.S. 720, 737–739, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977). For these reasons, the issue of joinder can be complex, and determinations are case specific.

Republic of Philippines v. Pimentel, 553 U.S. 851, 862-63 (2008).

BTU's perfunctory arguments as to the necessity of Bunkering as a party (see Doc. 28 at 10-11), which contain no citation to authority (not even Rule 19) do not convince the Court that this action cannot proceed without Bunkering.    See Hankins v. Astrue, No. 4:11-CV-2426-RDP, 2012 WL 4479242, at *8 (N.D. Ala. Sept. 24, 2012) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." (citing Cont'l Tech. Serv., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (*per curiam*) ("An argument not made is waived, whether based on federal law, the law of the forum state, or the law of a foreign state…Appellant's simple contention that California law controls does not present an argument based on California law. See Ordower v. Feldman, 826 F.2d 1569, 1576 (7th Cir. 1987) (issue raised perfunctorily without citation to

authority constitutes waiver of issue)…"))).

### 3. Ripeness

> Article III of the U.S. Constitution, limiting the jurisdiction of federal courts to actual cases or controversies, requires that [courts] consider whether [a plaintiff]'s claims are ripe for judicial review. U.S. CONST. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). At times, even when the constitutional requirements are met, [a court] may refrain from intervention for prudential reasons. Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997). The purpose of this doctrine is to avoid "entangling [our]selves in abstract disagreements[…]"

> In deciding the ripeness of a claim, [courts] inquire into 1) whether the issues are fit for judicial decision and 2) the hardship to the parties of withholding court consideration. Digital Properties, 121 F.3d at 589 (citing Abbott Labs.[ v. Gardner], 387 U.S. [136,] 149, 87 S. Ct. [1507,] 1515[ (1967)]). This inquiry into ripeness ensures that the plaintiff has suffered a sufficient injury to meet Article III's case or controversy requirement; it also permits us to determine "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995).

Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1322 (11th Cir. 2005).

" 'The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.' " Prine v. Chailland Inc., 402 F. App'x 469, 472 (11th Cir. 2010) (quoting Digital Props., 121 F.3d at 580). BTU claims that this action is not ripe for adjudication because it " 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Id. (quoting Texas v. United States, 523 U.S. 296, 300 (1998) (quotation omitted)). In support, BTU argues:

> Fratelli Cosulich claims to have been damaged by BTU's breach of contract, fraud and other wrongful actions. It claims that the other parties it is suing are *also* liable to it for damages; however, Fratelli Cosulich can recover only once for its damages. Here, Fratelli Cosulich is pursuing, *inter alia*, tort actions in this action against all defendants while in the bankruptcy proceeding, it pursues

contract theories only against Bunkering. Until the BTU bankruptcy[10] has been concluded, Fratelli Cosulich's actual damages are contingent on the outcome of that bankruptcy case in which it has filed its claim. Until that claim has been resolved, Fratelli Cosulich does not know whether it has been damaged at all, or how much. Until it can identify its damages, if any, its claims are not ripe and this litigation should be stayed.

(Doc. 28 at 11-12 & n.2).

BTU cites no authority in support of these arguments, and the Eleventh Circuit has found "unpersuasive," at least in the context of claims under the Racketeer Influenced and Corrupt Organizations Act, the argument that "claims are unripe—that is, [the plaintiff's] damages are too uncertain for a claim to have accrued—because [the plaintiff] might get some of its money back elsewhere." Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1350 (11th Cir. 2008). See also id. at 1351 ("Although the ongoing Dominican civil proceedings may result in possible recovery against Baez–Figueroa, who has significant personal assets but is also in jail and facing other claims from the collapse of BanInter, this mere possibility does not render the amount of damages unclear. This is not a case…where it was virtually certain that the amount of a fraudulently induced debt would be reduced by foreclosure on collateral. Recovery on the notes is, at best, a remote and highly contingent possibility. These RICO claims were ripe enough to be tried, under any standard."). Cosulich's ability to recover anything from Bunkering in its bankruptcy proceedings is far from certain, and even then, as Cosulich points out (Doc. 29 at 28), any recovery from Bunkering can be used to offset damages awarded in this action, if appropriate. The Court thus rejects BTU's contention that this action is unripe.

---

[10] The Court assumes that the use of "BTU bankruptcy" rather than "Bunkering bankruptcy" is a drafting error.

### 4.     Drastic Differences

Finally, BTU argues that amendment should be denied simply because "[t]he [PSAC] is vastly different from the originally filed Complaint[:]"

> First, the Amended Complaint seeks a jury. The Original Complaint did not. Second, while the Original Complaint was a simple collection action, the Amended Complaint alleges theories of alter ego, fraud and misrepresentation, suppression, deceit, fraudulent transfer, fraud in insolvency, negligence, wantonness, breach of fiduciary duty, piercing the corporate veil and claims for injunctive and equitable relief. Third, the factual allegations are vastly different; the Amended Complaint uses pages and pages to describe tortuous and complex relationships. Fourth, the parties are different. Fifth, the relief sought is different. The Amended Complaint seeks punitive damages as well as compensatory damages.
>
> …BTU respectfully submits the following should result in an exercise of discretion resulting in denial of the motion: (a) the amendment radically alters the scope and nature of the case; (b) Plaintiff offers no explanation of why this was not previously filed; (c) Plaintiff offers no explanation of why this drastic change is needed; (d) the Amended Complaint will require enormous investments of time in discovery, investigation and preparation which were in no way contemplated by the Original Complaint or envisioned by BTU as part of this case.

(Doc. 28 at 12-13).

Presumably, BTU is arguing that it would suffer "undue prejudice…by virtue of allowance of the amendment…"   Foman v. Davis, 371 U.S. 178, 182.   However, this action remains in its early stages (with no scheduling order having even been entered).   Rule 15(a)(2) states that courts "should freely give leave[ to amend] when justice so requires[,]" and BTU has cited no authority indicating that increased complexity alone is a sufficient reason to deny amendment of the complaint.   Thus, the Court overrules this objection as well.

### III.     Conclusion

For the foregoing reasons, it is **ORDERED** that Cosulich's Second Motion to Amend (Doc. 27) is **GRANTED**.   Cosulich shall file its proposed second amended complaint (Docs.

27-1 – 27-3) as the operative complaint in this action on or before **Friday, June 13, 2014**. Responsive pleadings shall be filed within the time provided by the Federal Rules of Civil Procedure.[11]

      **DONE** and **ORDERED** this the **11th** day of **June 2014**.

                  /s/ Kristi K. DuBose  
                  **KRISTI K. DuBOSE**
                  **UNITED STATES DISTRICT JUDGE**

---

[11] As such, BTU's Motion for Leave to Amend Answer to Add Additional Defense (Doc. 13) is **MOOT**.