## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FRATELLI COSULICH UNIPESSOAL, S.A. (f/k/a FRATELLI COSULICH CONSULTADORIA E PARTICIPACOES UNIPESSOAL, LDA), a Portuguese corporation, | * * * * * * * | |
| Plaintiff, | * * | CV - 13-545 |
| vs. | * * | JURY TRIAL REQUESTED |
| SPECIALTY FUELS BTU, LLC, an Alabama limited liability company; F. JAVIER BRITO, an Alabama citizen; and, BUNKERS INTERNATIONAL CORP., a Florida corporation, | * * * * * * | |
| Defendants. | * | |

## SECOND AMENDED COMPLAINT

### Parties

1.      Plaintiff, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA")(hereinafter "Cosulich"), is a foreign (alien) corporate entity incorporated under the laws of the Country of Portugal, specifically, the Portuguese Companies Code and

1

Decree/Law NR 212/94 which applies to Madeira Free Trade Zone Stock Corporation Companies like Cosulich.   Cosulich has the same or similar "characteristics" and can be "best understood" as a "corporation" under U.S. law. The designation "S.A." stands for "Sociedade Anonima" which, under Portuguese law, signifies it as a "stock corporation company", a designation separate and distinct from a "Sociedade Comandita por Accoes", or a "partnership by shares". Under these foreign laws, "S.A." shareholders are free from personal liability and their liability is limited to the shares to which they have subscribed; it is the "S.A.'s" assets which must respond to creditors.   The Portuguese Company Code requires that "S.A.s" be incorporated with a minimum of five (5) shareholders. Ownership in the company is represented by shares. The "S.A." is formed and operates under Articles of Association which establishes a Board of Directors.   The company name must be chosen by the shareholders and registered with the National Registration of Portuguese Companies, and the designation "S.A." must follow the name.   Decree/Law NR 212/94 allows for Madeira Free Trade Zone Stock Corporation Companies to be incorporated or held by one shareholder.   For these corporations, Portuguese law requires the company name to include the term "Unipessoal".   As noted by its full name, Cosulich is owned by a single shareholder.   That shareholder is an Italian corporation with its principal place of

2

business in Italy.

Cosulich is not incorporated in any other country or foreign (alien) state, or in any state of the United States.  Cosulich's principal place of business is located in Madeira, Portugal.

For purposes of establishing citizenship, Cosulich is a foreign (alien), incorporated business entity organized under the laws of the Country of Portugal with its principal place of business located in Portugal.

Cosulich is engaged, in part, in the business of vessel bunkering and the trading of fuel oil and fuel oil by-products.  Cosulich, through its agent in the United States, Asamar Inc. (referred collectively as "Cosulich"), provided credit terms to Specialty Fuels Bunkering, LLC (hereinafter "Bunkering"), and Specialty Fuels BTU, LLC, in connection with certain purchases and sales of fuel oil and fuel by-products.

2.    On  November  6,  2013,  Specialty  Fuels  Bunkering,  LLC ("Bunkering"), was a domestic, limited liability company formed under the laws of the  State  of  Alabama,  with  its  principal  place  of  business  located  in  Mobile County, Alabama. On information and belief, Bunkering was not formed under the laws of any other state of the Union or of any foreign (alien) nation.  At the time of the filing of the Plaintiff's Original Complaint on November 6, 2013, Bunkering

had two members:  F. Javier Brito and CCC Holdings, LLC.  F. Javier Brito was, and is, an adult citizen of the United States who was, and is, domiciled in Baldwin County, Alabama.  CCC Holdings, LLC, is a domestic, limited liability company formed under the laws of the state of Alabama with its principal place of business located in Mobile County, Alabama.  On information and belief, CCC Holdings, LLC, was not formed under the laws of any other state of the Union or of any foreign (alien) nation.  On November 6, 2013, the date of the filing of the Original Complaint, CCC Holdings, LLC, had one member, Scott Cleveland.  Scott Cleveland is an adult citizen of the United States who was domiciled at that time in Mobile County, Alabama.

At all times material to the claims asserted by Plaintiff, Bunkering was a purchaser of fuel oil product under stem number 6322 and, arguably, 6277 as described below.  On November 14, 2013, subsequent to the filing of Cosulich's Original Complaint, Bunkering filed for bankruptcy protection pursuant to Chapter 7 of the U.S. Bankruptcy Code in the United States District Court for the Southern District of Alabama, Southern Division [Case Number 13-04041]; consequently, pursuant to the automatic stay provisions of the Bankruptcy Code, Cosulich is not prosecuting claims against Bunkering within these proceedings.  Allegations herein relating to Bunkering are for informational and contextual purposes only and are

4

not to be construed by anyone as an attempt to state claims against it herein.[1]

3.     Defendant, Specialty Fuels BTU, LLC ("BTU"), is a domestic, limited liability company formed under the laws of the State of Alabama and with its principal place of business located in Mobile County, Alabama.  On information and belief, BTU was not formed under the laws of any other state of the Union or of any foreign (alien) nation. On November 6, 2013, the date of the filing of the Plaintiff's Original Complaint, BTU had one member, F. Javier Brito.  F. Javier Brito was, and is, an adult citizen of the United States who was, and is, domiciled in Baldwin County, Alabama. At all material times, BTU was a purchaser of fuel oil product under stem number 6277 and, arguably, 6322.  BTU is wholly owned and managed by an individual defendant herein, F. Javier Brito, who is the alleged managing member of Bunkering.  BTU as alleged herein is also the alter ego of Bunkering.

4.     Defendant, F. Javier Brito (hereinafter "Brito"), is an adult citizen of the United States and is domiciled in Baldwin County, Alabama.  At all times material to this Amended Complaint, Brito was the principal founder, investor, member and, currently, the disputed managing member of Bunkering. On information and belief, Brito was the principal founder, investor, member and,

---

[1]All rights and remedies which Cosulich may have with respect to Bunkering are expressly reserved for proceedings in the U.S. Bankruptcy Court as referenced.

currently, the managing and sole member of BTU.  At all times material to this Amended Complaint, Brito treated Bunkering and BTU as his alter ego, disregarded corporate form, acted on insider information to his personal financial benefit, engaged in waste with respect to Bunkering and BTU to his personal financial benefit, and otherwise engaged in conduct which would legally justify disregarding the corporate entity and piercing the corporate veil so as to render Brito personally liable to Cosulich for the actions and obligations of Bunkering and BTU, jointly and separately.

5.      Defendant, Bunkers International Corp. ("BI"), is a domestic corporation, incorporated under the laws of the state of Florida with its principal place of business located in Lake Mary, Florida.  Upon information and belief, BI is not incorporated under the laws of any other state of the Union or of a foreign (alien) nation.  For a prolonged period of time spanning several years and at all times material to this Amended Complaint, BI engaged in commercial activities purposefully directed to Cosulich, Bunkering, BTU, and Brito within the jurisdiction of this Court, namely, Mobile and Baldwin Counties, Alabama. These commercial activities, described *in part* by the allegations of this Amended Complaint, establish sufficient contacts within the State of Alabama and the venue of this Court to confer *in personam* jurisdiction over BI in this lawsuit.  Personal

jurisdiction is also conferred pursuant to Alabama's long arm statute: Rule 4.2(b), Alabama Rules of Civil Procedure.   At all times material to this Amended Complaint, BI acted by and through its duly authorized and appointed agents, servants and employees, including, but not limited to, its Chairman and CEO, John Canal and its "Vice President of Business Development and Strategic Initiatives", Paul Pappaceno (hereinafter "Pappaceno"), and is directly liable to Cosulich for all acts or omissions of its agents, servants and employees.

## Jurisdiction

6.     This is a civil action for claims at law and in equity within the meaning of the Acts of Congress; jurisdiction is based upon 28 U.S.C. §1332 (diversity) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs and there is complete diversity of citizenship between the parties.

## Facts

7.     Cosulich adopts and realleges the allegations of paragraphs 1 through 6 of its Amended Complaint as if fully set forth herein.

8.     Prior to June 1, 2012, Bunkering and BTU were engaged in the business of wholesale supply of fuel products.   They operated, jointly and/or separately, by buying fuel components, blending them to make specific types of fuel, and then selling the finished fuel or fuel oil by-product to a buyer.   This type

of operation required enough capital or credit on the part of Bunkering and BTU to enable each entity to purchase the component parts of the fuel, store them, blend them, sell them, deliver the product and then await payment. Bunkering and BTU engaged in business in such a manner, and through representations, that Cosulich considered them to be essentially the same company, "Specialty Fuels", owned, managed and controlled by one person, Brito.

9.    During the time period 2011 to January 1, 2013, and beyond, BI acted as the exclusive broker and agent for Cosulich involving numerous transactions with Bunkering and BTU. The transaction(s) can be described as a close-in-time purchase (by Cosulich) and sale (by Bunkering or BTU) of oil or fuel oil by-product on the promise that Bunkering or BTU, depending on the transaction, would buy the product back at a higher price.  These transactional arrangements were always closely tied to the existence and maintenance of the fuel-based product which was central to the business transaction and which can, and did, serve as security for the funds provided by Cosulich.

10.    With respect to these transactions, Cosulich, as principal, was approached by BI, primarily through Pappaceno, acting as broker and as an exclusive representative of Bunkering and BTU, to solicit business transactions between Cosulich and Bunkering or BTU. BI received commissions from Cosulich

in consideration for its activities as broker and agent. As a result of the principal/broker relationship, BI owed Cosulich certain duties of care traditionally recognized and created by this relationship. In addition to duties arising from the principal/broker relationship, the facts establish the existence of a "special relationship" between Cosulich and BI such that BI knew or should have known that Cosulich was relying on BI to act with all reasonable care and skill commensurate with its duties not only as its exclusive broker, agent, and sole intermediary with Bunkering and BTU, but also as a result of the "special relationship" it had with Cosulich and Bunkering and BTU pertaining to business dealings between Cosulich and Bunkering and BTU. The traditional duties arising from the principal/broker relationship and the duties arising from the "special relationship" then existing between Cosulich and Bunkering, including the trust and reliance it engendered, was based, in part, on BI's conduct including, but not limited to, the following:

(a)    BI made it known to Cosulich that it had acted as a factor for Bunkering and/or BTU in the past and, in fact, purchased Bunkering's invoices from Cosulich on at least two occasions in 2010, such that BI paid Cosulich's invoices to Bunkering as part of its factoring arrangement;

(b)    BI made it known to Cosulich that it bought and sold fuel oil and fuel

oil by-products on extended credit terms with Bunkering and BTU, thereby vouching for Bunkering and BTU's reliability as a financially sound and responsible business entity in further support of Cosulich doing business with those entities;

(c) BI's employee and agent, Pappaceno, informed Cosulich that he had invested his personal funds in Bunkering and/or BTU;

(d) BI consistently represented that it was working very closely with Bunkering, BTU and Brito, and was able to advise on Bunkering's and BTU's present ability to pay invoices in real time, thereby indicating that BI had been and was performing due diligence with respect to Bunkering and BTU. The timing and nature of BI's representations as to Bunkering and BTU's ability to pay indicated and led Cosulich to reasonably believe that BI was an "insider" with respect to those entities; and,

(e) BI insisted on serving as Cosulich's sole and exclusive communication intermediary with Bunkering, BTU and Brito and, in fact, insisted that Cosulich refrain from communicating or transacting business directly with Bunkering, BTU and Brito.

11. On all such business transactions and communications with Cosulich, BI, through Pappaceno, represented and/or led Cosulich to believe, among other

things, that Bunkering and/or BTU were credit and trust-worthy businesses; that Brito was a competent business manager in full control of Bunkering and/or BTU; that Bunkering and BTU were essentially "one-and-the-same"; and otherwise assured Cosulich of Bunkering and BTU's financial ability to perform the very transactions that BI was recommending to Cosulich.

12.    All of this created a custom and practice between BI and Cosulich and established a course of dealings upon which Cosulich reasonably relied. Based on the broker/agent relationship as well as the "special relationship" and trust that BI created with Cosulich, Cosulich relied on BI and Pappaceno's representations, assurances and recommendations, as its exclusive broker and agent, and engaged, over time, in numerous fuel oil transactions involving millions of dollars with Bunkering and/or BTU as described above.

13.    The level of trust and special relationship thus fostered by BI was also supported by the mutual understanding that all funds provided by Cosulich to Bunkering and/or BTU, through BI, were tied to and secured by a product or cargo – either the raw fuels obtained by Bunkering or BTU, through Brito, or the blended by-product to be sold in the market place by Bunkering or BTU, through Brito, so that Cosulich's investment was protected.

14.    Throughout all of this time, BI vouched for Bunkering, BTU and

Brito.  It fostered, solicited, encouraged, marketed and promoted the transactions and served as the sole communication intermediary between Cosulich and Bunkering/BTU and Brito.  As a result of these actions, among others, and the "special relationship" created thereby, BI assumed certain duties including those of reasonable or due care as Cosulich's exclusive broker, agent and fiduciary, which duties it owed to Cosulich.

15.  In July 2012, representatives of Cosulich traveled to Mobile, Alabama, and met directly with representatives of Bunkering, BTU and BI, including, among others, Brito and Pappaceno.  During this visit, Cosulich was given a tour of storage tank facilities in the Port of Mobile and was told by these representatives that Brito's businesses, Bunkering and BTU, were expanding, that they were planning further growth, and hoped to do business with Cosulich in their expansion.  BI directly participated in these marketing activities.

16.  On May 29, 2012, Bunkering commenced litigation against Brito in the Circuit Court of Baldwin County, Alabama, in which other members of Bunkering sought, among other things, to wrest control of Bunkering from Brito. Brito as a party, and on information and belief, BI as its business venturer and special agent, either had actual knowledge of this litigation or should have known of it at the time of the July 2012 visit by representatives of Cosulich as described in

paragraph 15, above.

17.     During this time, neither Brito, Pappaceno, or any other representative of Bunkering, BTU or BI stated, indicated or otherwise made known to Cosulich that management of Bunkering, namely, Brito and Scott Cleveland (hereinafter "Cleveland), was engaged in pitched litigation pending in the Circuit Court of Baldwin County, Alabama (hereinafter "litigation"), for control of Bunkering's business operations and that such was preventing Bunkering from being able to meet its financial obligations, *including financial obligations it owed to BI* as its trading partner.  Indeed, Brito filed pleadings in June 2012 in that litigation, one month or less before the July 2012 visit by Cosulich, in which he represented, on behalf of himself[2] and Bunkering[3], among other things, that because of the management dispute with Cleveland,

> (a) Bunkering's financing sources, expressly including BI, were not being paid and that Bunkering's customers' ships or vessels were at risk of seizure by BI;
>
> (b) Bunkering was losing the trust and good will of its customers thereby damaging Bunkering's ability to do business in the future;

---

[2]Brito was named individually as defendant in that litigation.

[3]Brito brought a counterclaim as managing member of Bunkering in that litigation.

(c) Bunkering's relationship with BI (a finance source) was being "irreparably damaged";

(d) Bunkering's ability to conduct business in general was being "irreparably damaged".

18.   On information and belief, the aforesaid financial difficulties created by the litigation continued and, in fact, worsened over time such that the ability of Bunkering and BTU to do business as normal became materially impaired.  Both entities as a result of this were in a more precarious and worsening financial position and became increasingly unable to perform on their financial obligations. BTU, Brito and, on information and belief, BI, knew or should have known of this worsening financial condition and, at a minimum, were obligated to inform Cosulich of these dire financial circumstances at that time, and certainly before they transacted with Bunkering and BTU through BI on stems 6277 and 6322 in January and April 2013, respectively, as described below.

19.   BI (as Cosulich's exclusive broker and agent, and as sole intermediary between Cosulich, Bunkering and BTU) and Bunkering and BTU had a duty to disclose, advise, protect and/or act with reasonable care in notifying and disseminating this material information concerning the dispute, the companies' financial difficulties and, specifically, the inability of Bunkering and BTU to

14

engage in the ordinary course of business in their dealings with Cosulich.  Rather than disclose the serious nature of the on-going dispute which was putting Bunkering in dire financial condition and severely jeopardizing its ability not only to meet its ongoing financial obligations at that time, but also to conduct business generally in the future, Bunkering, BTU, Brito and on information and belief, BI, through Pappaceno and others, either intentionally or through lack of due care, and in breach of their joint and several duties and responsibilities to Cosulich, kept Cosulich uninformed and "in the dark", thereby continuing to lead Cosulich to falsely believe that Bunkering and/or BTU were solvent business entities, financially healthy enough to be considering expansion, and that Bunkering's operations were "business as usual".

20.    By their conduct, representations, assurances and silence, Bunkering, BTU, Brito and on information and belief BI, acting through Pappaceno and others, concealed the true financial state of affairs from Cosulich so as to lead Cosulich into a false sense of their business affairs (and security) and to induce Cosulich to continue to do business with Bunkering and/or BTU by providing millions of dollars in funds to them or otherwise agreeing to "roll over" their outstanding financial obligations to Cosulich.

21.    Relying on the conduct, information and assurances of Bunkering,

BTU and BI, and particularly through the trust and special relationship created by BI as its exclusive broker and agent, Cosulich continued to do business with Bunkering and BTU, through its exclusive broker and agent, BI, to its ultimate financial detriment.  Had Cosulich been informed of the true state of Bunkering's business and financial affairs it would not have done so, and stems 6277 and 6322, described below, would not have been made.

22.    During the months of January and April 2013, Cosulich transacted business with Bunkering, through its exclusive broker and agent, BI, and directly with BTU, in good faith, by providing millions of dollars in credit to Bunkering and BTU. The terms on each of these transactions between Cosulich and Bunkering and BTU were thirty (30) days.  On the two stems at issue, Bunkering and BTU requested that the credit terms be "rolled over" several times to which Cosulich agreed.    BI, as Cosulich's exclusive broker and agent, through Pappaceno, was informed and had actual knowledge of these transactions and the fact that the obligations on these two stems were being "rolled over". The transactional details are as follows:

a.    **STEM 6277:**  On or about January 11, 2013, Cosulich paid BTU the amount of $2,828,322.00 for the purchase of 22,447 barrels of cutterstock under stem number 6277 (BTU invoice 130111-2) and on January 14, 2013,

Cosulich issued its Pro Forma invoice to BTU and/or Bunkering in the amount of $2,857,503.10. Thereafter, the following set of rolled over invoices was issued by Cosulich to BTU and/or Bunkering:

1)   Pro Forma of invoice 6277 dated February 27 for $2,886,684.20 (60 days);

2)   Pro Forma of invoice 6277 dated April 17 for $2,945,046.40 (120 days);

3)   Pro Forma of invoice 6277 dated April 17 for $2,974,227.50 (150 days);

4)   Pro Forma of invoice 6277 dated July 10 for $3,032,589.70 (210 days);

On or about July 24, 2013, Cosulich received a partial payment on stem 6277 of $1,500,000 allegedly by or on behalf of BTU.  On August 12, 2013, Cosulich issued its Pro Forma invoice 6277 to BTU and/or Bunkering for the balance remaining: $1,532,589.70.

The total owed to Cosulich by BTU and/or Bunkering on stem 6277 is **$1,532,589.70**, plus interest.  [BTU/Bunkering and Cosulich invoices pertaining to stem 6277 are re-attached collectively hereto as Exhibit "B' and are incorporated by reference as if fully set forth herein.]

b.   **STEM 6322:** On or about April 22, 2013, Cosulich paid Bunkering the amount of $1,600,000.00 under stem number 6322 in partial payment of Bunkering invoice 130416-1for the purchase of a portion (12,598.425 bbls) of a total of 23,500 barrels of Number 2 diesel fuel.  On May 29, 2013, Cosulich issued its Pro Forma invoice to Bunkering and/or BTU in the amount of $1,616,377.93 on that purchase. On May 21, 2013, Cosulich made its second payment to Bunkering under stem number 6322 in the amount of $1,384,500.00 in full payment of Bunkering invoice 130416-1for the purchase of the remaining 10,901.574 barrels of Number 2 diesel fuel.  On May 29, 2013, Cosulich submitted its Pro Forma invoice to Bunkering and/or BTU on the second remittance in the amount of $1,398,671.94.  Thereafter, the following set of rolled over invoices was issued by Cosulich to Bunkering and/or BTU:

1)   Pro Forma invoice 6322 dated April 22 for $1,632,775.88 (60 days for 12.5k bbls);

2)   Pro Forma invoice 6322 dated May 29, 2013, for $1,616,377.93 (30 days for 12.5k bbls);

3)   Pro Forma invoice 6322 dated July 10 for $1,412,843.99 (60 days for 10.9k bbls);

4)   Pro Forma invoice 6322 dated April 22 for $1,665,511.78 (120

18

days for 12.5k bbls);

5)   Pro Forma invoice 6322 dated July 25 for $1,427,016.04 (90

days for 10.9k bbls).

The total owed by Bunkering and/or BTU on stem number 6322 is

**$3,092,527.82**, plus interest.   [Bunkering/BTU and Cosulich invoices

pertaining to stem 6322 are attached collectively hereto as Exhibit "A" and

are incorporated by reference as if fully set forth herein.]

23.   The grand total owed to Cosulich by Bunkering and/or BTU (stems

6322 + 6277) = **$4,625,117.52**, plus interest.

24.   On April 29, 2013, Brito filed a Motion for Judicial Dissolution as to

Bunkering in the litigation based on allegations of financial misconduct,

misappropriation and waste allegedly perpetrated by Cleveland.  At no time while

these two stems were entered into or were being rolled over did Bunkering, BTU,

BI, Brito, or Pappaceno, advise Cosulich that Brito was either contemplating, or

actively seeking through court action, a dissolution of Bunkering, based largely on

the representation made in pleadings by Brito that there were "insufficient assets or

inventory on hand that can be sold for cash to pay off all the creditors of the

Company..." – in short, that Bunkering was *insolvent*. Had this information been

provided to Cosulich, it could have taken steps to demand immediate payments

from Bunkering, BTU and secure raw materials or product to protect its interest in same. Instead, Bunkering, BTU, Brito and, upon information and belief, BI, through Pappaceno and others, suppressed and concealed Brito's efforts to dissolve Bunkering, as well as Brito's belief that Bunkering was insolvent, from Cosulich and led Cosulich to believe that it was "business as usual" so that Cosulich would continue to roll over the indebtedness, do business with Bunkering, BTU and Brito, and not take steps to protect its interests.

25.   Notwithstanding the aforesaid motion requesting judicial dissolution which was not disclosed to Cosulich, in May 2013, representatives of Cosulich were invited to Mobile to meet again with Bunkering, BTU and Brito to discuss an expanded financial role for Cosulich in Bunkering and/or BTU's joint business ventures which BI, through Pappaceno, acting as Cosulich's exclusive broker and agent, was soliciting and promoting. When the meeting in Mobile was first proposed, Cosulich was informed that BI would be in attendance; however, BI pulled out of the meeting in Mobile. As a consequence, on May 9, 2013, Cosulich representatives traveled to Orlando, Florida, and met with representatives of BI, namely, CEO John Canal and Pappaceno. During these meetings, BI gave no hint or indication, much less disclose, that Brito was seeking judicial dissolution of Bunkering in the litigation, Cleveland's alleged misappropriation and waste of

Bunkering funds, and/or Bunkering's insolvency. Also present at BI offices on May 9, 2013, was Bunkering, BTU and Brito agent and employee, Sarah Shipman Myers.

26.   After the meeting in Orlando, Florida, these same Cosulich representatives traveled to Mobile, Alabama, where they met with Bunkering, BTU, Brito, and other agents, servants, and employees of same, including Sarah Shipman Myers, to discuss on-going and prospective business opportunities. The meeting was held on May 10, 2013, at the offices of Bunkering and BTU on St. Emanuel Street in Mobile and was attended by Brito, Sarah Shipman Myers, and other agents of Bunkering, BTU and Brito. During this meeting, Bunkering, BTU, Brito, and their agents, including Myers, despite the fact that Brito had filed a motion to judicially dissolve Bunkering, expressly represented that Bunkering and BTU were viable and financially sound business entities, that both business entities continued to be profitably engaged in their historical business pursuits, and otherwise provided express assurances by conduct, words and silence that it was not only "business as usual," but that Bunkering and BTU were hoping to expand business opportunities with Cosulich, which was being actively promoted and marketed in these meetings. In so doing, BTU and Brito, including their agents, servants and employees, suppressed and concealed the true, dire status of

Bunkering's business operations and financial condition from Cosulich.

27.   All joint and several representations by Bunkering and BTU (through their agents (including Brito, Sarah Shipman Myers, and others), BI (through Pappaceno and others), and/or Brito, jointly or severally, to the effect that Bunkering was an   active, viable, profitable business enterprise seeking joint business pursuits and opportunities with Cosulich, particularly those made after April 29, 2013, the date Brito filed his Motion for Judicial Dissolution, constitute affirmative misrepresentations, fraud and deceit within the meaning of Alabama Code Sections 6-5-100 *et seq.*, **Code of Alabama** (1975).

28.   At this time Bunkering and BTU were financially obligated to Cosulich for approximately $6 million dollars.   Bunkering and BTU, through Brito, and others working under him, and Cosulich's exclusive broker and agent, BI, through Pappaceno, requested that Cosulich "roll over" the indebtedness owed by Bunkering and BTU to Cosulich as the indebtedness came due.   Bunkering, BTU, BI, Brito, and Pappaceno, did not inform Cosulich of the pendency of the litigation, the contentions by Brito that Cleveland was misappropriating corporate funds, the contention by Cleveland that Brito was misappropriating funds, that Bunkering was unable to pay creditors, that Bunkering was insolvent or that Brito was seeking judicial dissolution of Bunkering.   Instead, Bunkering, BTU and Brito,

and their agents servants and employees, took affirmative action by conduct and affirmative representations to give Cosulich the impression during the May 2013 meeting that Bunkering and BTU were viable business concerns, and remained silent and concealed the true facts from Cosulich so that Cosulich would continue to transact business and not otherwise take steps to protect its financial stake by securing product or perfecting liens.

29.    On or about July 19, 2013, in support of his Motion for Judicial Dissolution of Bunkering (previously filed in the litigation on April 29, 2013), Brito filed an affidavit executed by him in which he testified that "Specialty [Bunkering] now is operating at a negative equity position... its liabilities exceed its assets....Specialty has no cash reserves, no available credit on terms that are viable to the continued operation of the business and thus has no way to operate as it has operated in the past." None of that information was provided to Cosulich during any meeting with Bunkering, BTU, BI, Brito and Pappaceno. A true and correct copy of the Brito Affidavit as filed in the litigation is attached hereto as Exhibit "D", and is incorporated by reference as if fully set forth herein.

30.    At all times material to the Amended Complaint, Cosulich relied to its detriment on the assurances provided by Bunkering, BTU, BI, Brito and their agents, that Bunkering and BTU were healthy, viable, growing business concerns;

their silence as to the true facts; and, as a consequence, was damaged.

31.     At all times material to this Amended Complaint, Bunkering, BTU, BI, Brito and Pappaceno, among others, engaged, jointly and separately, in a plan, scheme or artifice to defraud Cosulich by misrepresenting and concealing Bunkering and/or BTU's financial condition and insolvency in violation of Alabama Code §13A-9- 48 [**Fraud in Insolvency**].

32.     The insolvency of Bunkering has now been made manifest by its Chapter 7 bankruptcy filing as noted, *supra*.

33.     Bunkering and BTU, through Brito's activities, including the alleged co-mingling of business funds and use and/or transfer of business funds for his own personal benefit, served as Brito's alter ego and personal instrumentalities for purposes of disregarding the corporate or business form.

34.     Cosulich has made written demand on Bunkering and BTU for payment.   Despite repeated demands by Cosulich, Bunkering and BTU have not remitted payment to Cosulich or otherwise provided adequate assurances or security for same.  Bunkering is now in bankruptcy.

35.     Bunkering and/or BTU acknowledged that Cosulich has and maintains a right to possess the product at issue as security for the debt evidenced by the invoices.  See "Warehouse Receipt" dated April 8, 2013, attached to the Original

Complaint as Exhibit "C" and incorporated by reference as if fully set forth herein.

36.     Despite repeated demands for payment on its invoices and/or for access, possession or information relating to the location and status of the product/collateral, Bunkering and BTU have failed to provide same.

37.     The fuel-based product in question was capable of being conveyed, sold and physically transferred and/or "consumed" or otherwise placed beyond the jurisdiction of this Court and the ability of Cosulich to adequately secure its collateral as security for payment on the debts.  As a proximate consequence of the concealment of Bunkering and BTU's insolvency, Cosulich did not take steps to secure such fuel-based product collateral and, on information and belief, any such product has now been sold, transferred, misappropriated or wasted by Bunkering, BTU, Brito and or those working under their control.

38.     On information and belief, based upon allegations plead in the litigation, assets of Bunkering and BTU (which could have been used to satisfy the indebtedness owed to Cosulich) were misappropriated or converted to the personal use of Brito who disregarded corporate form and used Bunkering and/or BTU as a sham or subterfuge for his own personal financial gain, subverting the rights and to the financial detriment of Cosulich.

### Count One

25

**(Breach of Contract/Account Stated)**

39.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 38 of this Amended Complaint as if fully set forth herein.

40.     Cosulich claims of the Defendant, BTU under stem 6322, the sum of **$3,092,527.82**, together with interest thereon for breach of contract or stated account.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendant, Specialty Fuels BTU, LLC, in the amount of **$3,092,527.82**, plus prejudgment interest and costs of Court.

## Count Two

**(Breach of Contract/Account Stated)**

41.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 40 of this Amended Complaint as if fully set forth herein.

42.     Cosulich claims of the Defendant(s), BTU, under stem 6277, the sum of **$1,532,589.70**, together with interest thereon for breach of contract or stated account.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal,

LDA"), demands judgment against the Defendant, Specialty Fuels BTU, LLC, in the amount of **$1,532,589.70**, plus prejudgment interest and costs of Court.

## Count Three

### (Fraud/Misrepresentation)

43.    Cosulich adopts and realleges the allegations contained in paragraphs 1 through 42 of this Amended Complaint as if fully set forth herein.

44.    At all times material to this Amended Complaint, BTU, BI, and Brito, jointly and separately, in violation of §§6-5-101 & 103 **Code of Alabama** (1975), acted willfully to deceive, and/or recklessly, negligently and/or wantonly misrepresented (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral to Cosulich so that Cosulich, being ignorant of the true facts through no fault of its own, would continue to engage in significant business transactions with Bunkering and BTU and not take steps to protect its interests.

45.    Cosulich relied upon the willful, reckless, negligent and/or wanton misrepresentations and undisclosed fraudulent conduct of BTU, BI, and Brito and engaged in business transactions with Bunkering and BTU, through its exclusive broker and agent, BI, by extending millions of dollars in funds toward their business enterprise, purchasing millions of dollars worth of product, rolling over

Bunkering and BTU's indebtedness to it, and otherwise causing Cosulich to delay efforts to perfect liens, file suit, or otherwise secure the fuel based product to serve as collateral for the funds provided to Bunkering and/or BTU.

46.    As a proximate result, Cosulich was damaged.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendants, Specialty Fuels BTU, LLC, Bunkers International Corporation, and Javier Brito, jointly and separately, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## <u>Count Four</u>

## <u>(Suppression)</u>

47.    Cosulich adopts and realleges the allegations contained in paragraphs 1 through 46 of this Amended Complaint as if fully set forth herein.

48.    At all times material to this Amended Complaint, BTU, BI, and Brito, jointly and separately, negligently/wantonly or with an intent to deceive, engaged in activities and conduct as aforesaid to conceal and suppress material facts from Cosulich, in violation of §6-5-102 **Code of Alabama** (1975), which they had a duty to disclose, jointly and separately, as to (a) the true state of the financial

condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral so that Cosulich, being ignorant of the true facts through no fault of its own, would continue to engage in significant business transactions with Bunkering and BTU and not take steps to protect its interests.

49.     Cosulich relied upon the concealment and suppression of material facts as described and engaged in business transactions with Bunkering and BTU, through its exclusive broker and agent, BI, by not being informed of the true facts as they related to Bunkering and/or BTU and extending millions of dollars in funds toward their business enterprise, purchasing millions of dollars worth of product, rolling over Bunkering and BTU's indebtedness to it, and otherwise causing Cosulich to delay efforts to perfect liens, file suit, or otherwise secure the fuel based product to serve as collateral for the funds provided to Bunkering and/or BTU.

50.     As a proximate result, Cosulich was damaged.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendants, Specialty Fuels BTU, LLC, Bunkers International Corporation, and Javier Brito, jointly and separately, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest,

punitive damages as may be determined by the jury, and costs of Court.

## **Count Five**

### **(Deceit)**

51.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 50 of this Amended Complaint as if fully set forth herein.

52.     At all times material to this Amended Complaint, BTU, BI, and Brito, jointly and separately, in violation of §6-5-104 **Code of Alabama** (1975), negligently/wantonly and/or willfully deceived Cosulich with an intent to induce injury or risk and misrepresented (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral to Cosulich so that Cosulich, being ignorant of the true facts through no fault of its own, would continue to engage in significant business transactions with Bunkering and BTU and not take steps to protect its interests.

53.     Cosulich relied upon the negligent/wanton and/or willful deceit, misrepresentations, undisclosed fraudulent conduct and conspiracy of BTU, BI, and Brito to its detriment and engaged in business transactions with Bunkering and BTU, through its exclusive broker and agent, BI, by extending millions of dollars in funds toward their business enterprise, purchasing millions of dollars worth of product, rolling over Bunkering and BTU's indebtedness to it, and otherwise

causing Cosulich to delay efforts to perfect liens, file suit, or otherwise secure the fuel based product to serve as collateral for the funds provided to Bunkering and/or BTU.

54.    As a proximate result, Cosulich was damaged.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendants, Specialty Fuels BTU, LLC, Bunkers International Corporation, and Javier Brito, jointly and separately, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## **Count Six**

## **(Fraud in the Inducement)**

55.    Cosulich adopts and realleges the allegations contained in paragraphs 1 through 54 of this Amended Complaint as if fully set forth herein.

56.    At all times material to this Amended Complaint, BTU and/or Brito, and BI, as Cosulich's exclusive broker and agent, jointly and separately, negligently, wantonly, and/or recklessly engaged in activities and conduct as aforesaid pursuant to misrepresent and/or conceal or suppress information which they had a duty to disclose, jointly and separately, as to (a) the true state of the

financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral so that Cosulich, being ignorant of the true facts through no fault of its own, would continue to engage in significant business transactions with Bunkering and BTU and be induced not take steps to protect its interests.

57.    Additionally, BTU and Brito, acting individually or in conspiracy with one or more of the named Defendants, engaged in fraudulent conduct by misappropriating, wasting and transferring assets of Bunkering and BTU in order to avoid collection or seizure efforts by Cosulich, among other creditors.  BI, as Cosulich's exclusive broker and agent, had a duty to discover and/or disclose this information to Cosulich.   Bi breached this duty by failing to so discover or otherwise inform Cosulich.

58.    Cosulich relied upon the joint and several undisclosed fraudulent conduct and/or transfer of assets by BTU, BI, and Brito and engaged in business transactions with Bunkering, BTU, and Brito, through its exclusive broker and agent, BI, by extending millions of dollars in funds toward their business enterprise, purchasing millions of dollars worth of product, rolling over Bunkering and BTU's indebtedness to it, and otherwise causing Cosulich to delay efforts to perfect liens, file suit, or otherwise secure the fuel based product to serve as

collateral for the funds provided to Bunkering and BTU.

59.     As a proximate result, Cosulich was damaged.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendants, Specialty Fuels BTU, LLC, Bunkers International Corporation, and Javier Brito, jointly and separately, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## **Count Seven**

## **(Fraud in Insolvency)**

60.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 59 of this Amended Complaint as if fully set forth herein.

61.     At all times material to this Amended Complaint, BTU and/or Brito had actual or implied knowledge that proceedings had been or were about to be instituted for the dissolution, bankruptcy or appointment of a receiver for Bunkering within the meaning of Alabama Code §13A-9- 48 [**Fraud in Insolvency**].

62.     Cosulich claims a private right of action against BTU and/or Brito for violation of Alabama Code §13A-9- 48 [**Fraud in Insolvency**].

33

63.     Acting with the intent to deceive one of Bunkering's creditors, namely, Cosulich, BTU and/or Brito, acting either individually or in conspiracy with one another, or any combination of same, committed fraud in insolvency by

(a)     conveying, transferring, removing, concealing, destroying, encumbering or otherwise disposing of assets of and/or interests in Bunkering's and or BTU's estate; and/or

(b)     presenting false material information to Cosulich regarding the financial condition and solvency of Bunkering and/or BTU.

64.     As a proximate result of the Defendants' violation of the provisions of Alabama Code §13A-9- 48 [**Fraud in Insolvency**], either individually or in conspiracy with one another or any combination of same, Cosulich was injured and damaged as aforesaid.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendants, Specialty Fuels BTU, LLC, and Javier Brito, jointly and separately, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## Count Eight

### (Negligence/Wantonness)

65.    Cosulich adopts and realleges the allegations contained in paragraphs 1 through 64 of this Amended Complaint as if fully set forth herein.

66.    At all times material to this Amended Complaint, BI, acting through its agents, servants and employees including, but not limited to, its CEO, John Canal, and "Vice President of Business Development and Strategic Initiatives", Paul Pappaceno, owed direct duties of reasonable care with respect to Cosulich. BI is vicariously liable under *respondeat superior* for the acts and omissions of its agents, including, but not limited to, John Canal and Paul Pappaceno.

67.    BI negligently and/or wantonly breached those duties by, but not limited to, the following:

    (a)    recommending and vouching for Bunkering, BTU and Brito as sound, commercially viable, stable, competent and suitable business partners for Cosulich when the opposite was true;

    (a)    failing to exercise reasonable due diligence in determining the financial condition and well-being of Bunkering and/or BTU and truthfully advising Cosulich as to same, particularly given BI's relationship and insider position with Bunkering, BTU and Brito;

(c)   failing to warn Cosulich of Bunkering and/or BTU failing financial position over time while continuing to seek continued participation by Cosulich in Bunkering and BTU's business enterprise;

(d)   failing to advise or warn Cosulich of the litigation between Brito and Cleveland, the allegations of fraud, mismanagement, waste, misappropriation of corporate funds, corporate insolvency and planned dissolution; and,

(f)   failing to advise or warn Cosulich that Bunkering and/or BTU was in default of debts owed to BI, that BI was contemplating in rem proceedings against Bunkering and/or BTU customers, and that BI was no longer providing funds to Bunkering, BTU or Brito, thereby preventing them from conducting business as normal, while continuing to solicit financial participation by Cosulich;

68.   As a proximate result of these and other breaches of legal duties owed by BI, Cosulich suffered injury and damage as aforesaid.

69.   BI's wanton acts and omissions were made with a conscious disregard for the rights of Cosulich such that an award of punitive damages is warranted.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendant, Bunkers International Corporation, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## Count Nine

### (Negligence/Wantonness)

### (Breach of Fiduciary/Broker Duties)

70.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 69 of this Amended Complaint as if fully set forth herein.

71.     At all times material to this Amended Complaint, BI, as Cosulich's exclusive broker and agent, acting through its agents, servants and employees including, but not limited to, its CEO, John Canal, and "Vice President of Business Development and Strategic Initiatives", Paul Pappaceno, owed direct duties of reasonable care to Cosulich.  The duties owed by BI to Cosulich arose from its position as Cosulich's exclusive broker and agent which placed BI into a position of trust (fiduciary) or otherwise were created by the special relationship between

BI and Bunkering and Brito under the facts and circumstances of this case. BI is vicariously liable under *respondeat superior* for the acts and omissions of its agents, servants, and employees, including, but not limited to, John Canal and Paul Pappaceno.

72.     BI negligently and/or wantonly breached those duties by, but not limited to, the following:

(a)     recommending and vouching for Bunkering, BTU and Brito as sound, commercially viable, stable, competent and suitable business partners for Cosulich when the opposite was true;

(b)     making unfounded representations that induced reliance on the part of Cosulich and gave Cosulich a false sense of security;

(c)     failing to possess a degree of competent skill to perform the duties of broker under these circumstances;

(d)     failing to adhere to industry standards;

(e)     failing to adequately supervise Pappaceno in the performance of his broker duties to Cosulich;

(f)     failing to exercise reasonable due diligence in determining the financial condition and well-being of Bunkering and/or BTU and truthfully advising Cosulich as to same, particularly given

BI's relationship and insider position with Bunkering, BTU and Brito;

(g) failing to warn Cosulich of Bunkering and/or BTU failing financial position over time while continuing to market Bunkering and BTU to Cosulich and seek continued participation by Cosulich in Bunkering and BTU's business enterprise(s);

(h) failing to advise or warn Cosulich of the litigation between Brito and Cleveland, the allegations of fraud, mismanagement, waste, misappropriation of corporate funds, corporate insolvency and planned dissolution;

(i) failing to advise or warn Cosulich that Bunkering and/or BTU was in default of debts owed to BI, that BI was contemplating in rem proceedings against Bunkering and/or BTU customers, and that BI was no longer providing funds to Bunkering, BTU or Brito, thereby preventing them from conducting business as normal, while continuing to solicit financial participation by Cosulich; and,

(j) failure to exercise sound and reasonable judgment as agent and

39

broker on behalf of its principal, Cosulich.

73.    As a proximate result of the breach of these duties and other breaches of trust and fiduciary responsibilities owed by BI, Cosulich suffered injury and damage as aforesaid.

74.    BI's wanton acts and omissions were made with a conscious disregard for the rights of Cosulich such that an award of punitive damages is warranted.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendant, Bunkers International Corporation, for compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

## Count Ten

## (Piercing Corporate Veil)

75.    Cosulich adopts and realleges the allegations contained in paragraphs 1 through 74 of this Amended Complaint as if fully set forth herein.

76.    At all times material to this Amended Complaint, Brito as the managing member of Bunkering and sole owner of BTU, engaged in conduct which would justify the disregarding of each corporate entity in order to pierce the

40

corporate veil so as to impose, in equity, liability on Brito individually for the acts, errors, omissions, frauds, debts and other obligations of Bunkering and BTU.

77.    Further, BTU, as an entity solely owned, managed and controlled by Brito, was used by him and others as the alter ego of Bunkering so as to cause others, including Cosulich, to believe that both entities were "one and the same" (i.e., "Specialty Fuels") such that doing business with one was the same as doing business with the other.  See, Exhibits "A" and "B".  In that regard, BTU was in fact the alter ego of Bunkering.

78.    Such conduct includes, but is not limited to,

   (a)    completely disregarding corporate form as to both entities, Bunkering and BTU;

   (b)    failing to comply with corporate law and engaging in *ultra vires* acts;

   (c)    failing to maintain corporate records and financial books;

   (d)    engaging in fraudulent misconduct;

   (e)    treating corporate assets as their own;

   (f)    misappropriating, conveying and/or transferring corporate funds and assets for their own personal financial gain to the exclusion and detriment of Bunkering and BTU's creditors

41

including Cosulich;

(g)     treating both corporate entities as one and the same or alter egos of each other;

(f)     leading others to believe and have the impression that both entities were one and the same; and,

(g)     creating these and other sham corporate entities, such as Kudzu Marine, as a part of a plan, scheme or artifice to subvert the rights of and to defraud others, including Cosulich.

79.     As a proximate consequence of Brito's conduct, the Court should, in equity, disregard the corporate form and allow recovery by Cosulich against him personally for the debts and other liabilities of Bunkering and/or BTU.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands judgment against the Defendant, Javier Brito, individually, and Specialty Fuels BTU, LLC, for all liabilities of Specialty Fuels Bunkering, LLC, debtor in Chapter 7 bankruptcy, and Specialty Fuels BTU, LLC, in the form compensatory damages in the amount of **$4,625,117.52**, plus prejudgment interest, punitive damages as may be determined by the jury, and costs of Court.

42

## **Count Eleven**

## **(Claims for Equitable/Injunctive Relief)**

80.     Cosulich adopts and realleges the allegations contained in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

81.     Bunkering, BTU and BI, through its or their agents, servants and employees, have represented, jointly and separately, to Cosulich that some or all of their joint and/or several indebtedness to Cosulich is secured by product.   See "Warehouse Receipt", Exhibit "C".  Cosulich is unable to determine the veracity of these representations, the authenticity of the "Warehouse Receipt" or the existence *in fact* of any such security.

82.     Cosulich faces imminent and irreparable injury and harm if BTU is not restrained from selling or otherwise disposing of product securing said indebtedness. Such damage has no adequate remedy at law and is not compensable in money damages as Bunkering is now in bankruptcy and BTU, on information and belief, is insolvent.  Cosulich has a substantial likelihood of prevailing on the merits of this dispute.

83.     BTU is indebted to Cosulich and retains, on information and belief, all or a substantial portion of product which is held as security for the indebtedness sued upon. BTU has refused to provide or pledge other security to Cosulich and

will be unjustly enriched by selling or otherwise disposing of this security without satisfying its indebtedness to Cosulich.

84.     Cosulich is prepared to post a reasonable bond as may be required by the Court to secure the injunctive relief sought herein.

85.     Accordingly, Cosulich seeks equitable remedies against BTU including, but not limited to, a temporary restraining order, preliminary and permanent injunctions, and other relief consisting of the following:

   a.     accepting jurisdiction over this cause and setting of an immediate hearing thereon to consider the issuance of a temporary restraining order;

   b.     to immediately establish an equitable lien in favor of Cosulich with respect to any product held as security for the indebtedness sued upon;

   c.     restraining and enjoining BTU, including its agents, servants and employees, and anyone under its direction and control, from selling, disposing or in any way transferring any product held as security for the indebtedness sued upon herein either through these proceedings or through bankruptcy court in Bunkering's Chapter 7 proceedings;

    d.      requiring that the *status quo* be maintained and no further product sold, conveyed, transported, delivered, consumed or otherwise disposed of without further order and approval of this Court or as may be appropriate, the bankruptcy court in Bunkering's Chapter 7 proceedings; and,

    e.      taxing costs of this action to BTU and/or together with such other, further relief as may be appropriate at law or in equity, including an award of reasonable attorneys' fees.

WHEREFORE, premises considered, Fratelli Cosulich Unipessoal, S.A. (formerly known as "Fratelli Cosulich Consultadoria E Participacoes Unipessoal, LDA"), demands pre-judgment seizure of assets and other equitable/injunctive relief against the Defendant, Specialty Fuels BTU, LLC, including its agents, servants, and employees, plus prejudgment interest, attorney's fees, costs and other relief both legal and equitable as may be deemed appropriate by the Court.

**PLAINTIFF RESPECTFULLY REQUESTS TRIAL AS TO ALL CLAIMS BY STRUCK JURY.**

                    Respectfully submitted,

45

/s/ Charles J. Potts

CHARLES J. POTTS (POTTC0053)
Attorney for Plaintiff, Fratelli Cosulich
Unipessoal, S.A. (formerly known as
"Fratelli Cosulich Consultadoria E
Participacoes Unipessoal, LDA")

OF COUNSEL:
BRISKMAN & BINION
205 Church Street
Mobile, Alabama 36601
t.251.433.7600
f.251.433.4485
cpotts@briskman-binion.com

THE DEFENDANT WILL BE SERVED BY PERSONAL SERVICE AS
FOLLOWS:

F. Javier Brito
150 Country Club Drive
Daphne, Alabama 36526

THE DEFENDANT WILL BE SERVED BY CERTIFIED MAIL AS FOLLOWS:

Bunkers International Corporation
c/o John T. Canal
Registered Agent
110 Timberlachen Circle
Suite #1012
Lake Mary, FL  32746





THANK YOU
FOR YOUR
BUSINESS

## BULK SALE
## INVOICE

| DATE FUELED | INVOICE # |
|---|---|
| 17-Apr-13 | 130416-1 |

**BILL TO:**
Fratelli Cosulich, Unipessoal S.A.

**SHIP TO:**
Fratelli Cosulich, Unipessoal S.A.
Rua Queimada de Baixo,
SA - 1º Andar
Funchal, Madeira 9000-068
Portugal

| SHIP VIA | PORT | TERMS | DUE DATE | INVOICE DATE |
|---|---|---|---|---|
| ABT Tank 2/ARC Tank 1 | Mobile, AL | DOR | 18-Apr-13 | 17-Apr-13 |

| DESCRIPTION | PRODUCT | QUANTITY | RATE | AMOUNT |
|---|---|---|---|---|
| Bulk sale to Fratelli Cosulich, Unipessoal S.A. made on, by, or into ABT Tank 2/ARC Tank 16. | #2 Diesel | 23500 | $ 127.00 | $ 2,984,500.00 |
| | | | | |
| **NO CHECKS ACCEPTED** | | | | |
| Buyer PO #: | **NO BANK DEDUCTIONS ALLOWED** | | **TOTAL:** | $ 2,984,500.00 |

Please remit wire payment to:
BBVA Compass Bank
Birmingham, AL
ABA/ACH # 062001186
For further credit to:
Specialty Fuels Bunkering
Account # 2527468062



EXHIBIT
A

*Fratelli Cosulich* ®

## FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

**Pro forma Invoice: 6322**

M/V **ABT TANK 2** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
VAT: 999999994

| | |
|---|---|
| Date : | **April 22, 2013** |
| Port: | **MOBILE** |
| Delivery: | **April 17, 2013** |
| Stem Nº: | **6322** |

| Product | Qty | Cur | Un.Price | Total |
|---|---|---|---|---|
| ISO 8217:2005 DMA | 12,598.425 BBL | USD | 129.60 | 1,632,755.88 |

### Invoice Total: USD 1632755.88

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 60 Days from date of delivy |
|---|---|
| **Due date** | June 21, 2013 |
| **USD Account** | BENEFICIARY BANK: Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |
| **Penalties** | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |

# *Fratelli Cosulich* ©

## FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA

### AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma invoice:* **6322**

M/V **ABT TANK 2** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| *Date :* | **May 29, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **April 22, 2013** |
| *Stem N°:* | **6322** |

| Product | Qty | Cur | Un. Price | Total |
|---|---|---|---|---|
| ISO 8217:2005 DMA | 12,598.425 BBL | USD | 128.30 | 1,616,377.93 |

### Invoice Total: USD 1616377.93

*Please make payment by **telegraphic transfer, free of any bank charges.***

| Payment Terms | 30 Days from date of delivery |
|---|---|
| **Due date** | May 22, 2013 |
| USD Account | <u>BENEFICIARY BANK</u>:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 <br> <u>INTERMEDIARY BANK</u>:UBS AG, STAMFORD BRANCH Swift: UBSWUS33 For account of: UBS AG, SINGAPORE ACCT NO: 101-WA-216003-000 |

| Penalties | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |
|---|---|



## *Fratelli Cosulich* ®

**FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA**

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma Invoice:* **6322**

**M/V ABT TANK 2** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| *Date :* | **July 10, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **May 21, 2013** |
| *Stem N°:* | **6322** |

| Product | Qty | Cur | Un.Price | Total |
|---|---|---|---|---|
| ISO 8217:2005 DMA | 10,901.574 BBL | USD | 129.60 | 1,412,843.99 |

### Invoice Total: USD 1412843.99

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 60 Days from date of delivery |
|---|---|
| **Due date** | July 19, 2013 |
| USD Account | BENEFICIARY BANK:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |

| Penalties | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |
|---|---|



## FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

Pro forma Invoice: **6322**

**M/V ABT TANK 2 and/or OWNERS and/or**
**CHARTERERS and/or OPERATORS and/or**
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| Date : | **April 22, 2013** |
| Port: | **MOBILE** |
| Delivery: | **April 17, 2013** |
| Stem N°: | **6322** |

| Product | Qty | Cur | Un.Price | Total |
|---|---|---|---|---|
| ISO 8217:2005 DMA | 12,598.425 BBL | USD | 132.20 | 1,665,511.78 |

**Invoice Total: USD 1665511.78**

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 120 DAYS FROM DELIVERY DATE |
|---|---|
| Due date | August 20, 2013 |
| USD Account | BENEFICIARY BANK:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG,.SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |
| Penalties | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |



**FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA**

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma Invoice:* **6322**

M/V **ABT TANK 2** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| *Date :* | **July 25, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **May 21, 2013** |
| *Stem N°:* | **6322** |

| Product | Qty | Cur | Un. Price | Total |
|---|---|---|---|---|
| ISO 8217:2005 DMA | 10,901.574 BBL | USD | 130.90 | 1,427,016.04 |

**Invoice Total: USD 1427016.04**

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 90 Days from date of delivery |
|---|---|
| **Due date** | **August 19, 2013** |
| **USD Account** | BENEFICIARY BANK: Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |
| **Penalties** | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |

# SPECIALTY FUELS BTU, LLC

THANK YOU
FOR YOUR
BUSINESS

### BULK SALE
### INVOICE

| DATE FUELED | INVOICE # |
|---|---|
| 11-Jan-13 | 130111-2 |

**BILL TO:**
Fratelli Cosulich LDA

**SHIP TO:**
Fratelli Cosulich LDA
c/o Asamar
Attn: Fabrizio Forghieri
125 Maiden Lane, Suite 209
New York, NY 10038
USA

| RECEIVED BY | PORT | TERMS | DUE DATE | INVOICE DATE |
|---|---|---|---|---|
| KDZ-101/KDZ-102 | Mobile, AL (Arc S/T 9) | 3 DOD | 14-Jan-13 | 11-Jan-13 |

| DESCRIPTION | PRODUCT | QUANTITY | RATE | AMOUNT |
|---|---|---|---|---|
| Bulk sale to Fratelli Cosulich LDA made on or into KDZ-101/KDZ-102. | Cutterstock | 22447 | $ 126.00 | $ 2,828,322.00 |
| | Delivery | 1 | $ . | $ . |

| | | | |
|---|---|---|---|
| **NO CHECKS ACCEPTED** | | | |
| Buyer PO #: | **NO BANK DEDUCTIONS ALLOWED** | **TOTAL:** | $ 2,828,322.00 |

Please remit wire payment to:
Hancock Bank
Mobile, AL
ABA #: 065400153
For further credit to:
Specialty Fuels BTU
Account #: 00720769914





**FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA**

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma Invoice:* **6277**

M/V **KDZ 101 - KDZ 102** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS
P.O. BOX 2483
36652 MOBILE AL**

| | |
|---|---|
| *Date :* | **February 27, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **January 14, 2013** |
| *Stem N°:* | **6277** |

| Product | Qty | Cur | Un.Price | Total |
|---|---|---|---|---|
| Cutterstock | 22,447.000 BBL | USD | 128.60 | 2,886,684.20 |

### Invoice Total: USD 2886684.20

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 60 Days from date of delivery |
|---|---|
| **Due date** | March 15, 2013 |
| **USD Account** | BENEFICIARY BANK:UBS AG, STAMFORD BRANCH Swift: UBSWUS33 For account of: UBS AG, SINGAPORE ACCT NO: 101-WA-216003-000 INTERMEDIARY BANK:UBS AG, SINGAPORE (Swift: UBSWSGSG)ACCT NO 11511610020 FRATELLI COSULICH CONSULTADORIA E PARTICIPACOES LDA |
| **Penalties** | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |



**FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA**

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma Invoice:* **6277**

M/V **KDZ 101 - KDZ 102** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**

| | |
|---|---|
| *Date :* | **April 17, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **January 14, 2013** |
| *Stem N°:* | **6277** |

| Product | Qty | Cur | Un. Price | Total |
|---|---|---|---|---|
| Cutterstock | 22,447.000 BBL | USD | 131.20 | 2,945,046.40 |

**Invoice Total: USD 2945046.40**

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 120 DAYS FROM DELIVERY DATE |
|---|---|
| **Due date** | May 14, 2013 |
| **USD Account** | BENEFICIARY BANK:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |
| **Penalties** | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |



## FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

**Pro forma Invoice: 6277**

M/V **KDZ 101 - KDZ 102** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| *Date :* | **April 17, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **January 14, 2013** |
| *Stem N°;* | **6277** |

| Product | Qty | Cur. | Un. Price | Total |
|---|---|---|---|---|
| Cutterstock | 22,447.000 BBL | USD | 132.50 | 2,974,227.50 |

### Invoice Total: USD 2974227.50

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 150 Days from date of delivery |
|---|---|
| **Due date** | June 13, 2013 |
| **USD Account** | BENEFICIARY BANK:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |
| **Penalties** | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |



**FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES UNIPESSOAL, LDA**

AVENIDA ARRIAGA 34 4 ANDAR SALA B - FUNCHAL - MADEIRA 9000-064 - VAT PT511247052

*Pro forma Invoice:* **6277**

M/V **KDZ 101 - KDZ 102** and/or OWNERS and/or
CHARTERERS and/or OPERATORS and/or
**SPECIALTY FUELS**
**P.O. BOX 2483**
**36652 MOBILE AL**
**VAT: 999999994**

| | |
|---|---|
| *Date :* | **July 10, 2013** |
| *Port:* | **MOBILE** |
| *Delivery:* | **January 14, 2013** |
| *Stem Nº:* | **6277** |

| Product | Qty | Cur | Un.Price | Total |
|---|---|---|---|---|
| Cutterstock | 22,447.000 BBL | USD | 135.10 | 3,032,589.70 |

### Invoice Total: USD 3032589.70

*Please make payment by telegraphic transfer, free of any bank charges.*

| Payment Terms | 210 Days from date of delivery |
|---|---|
| **Due date** | August 12, 2013 |
| **USD Account** | BENEFICIARY BANK:Wire remitance in immediately available U.S. funds to: BENEFICIARY BANK: UBS AG, SINGAPORE (SWIFT UBSWSGSG) BENEFICIARY: FRATELLI COSULICH CONSULTADORIA E PARTICIPAÇÕES LIMITADA * ACCOUNT NO. 11511610002 |

| Penalties | 1,5% PER MONTH PRORATED DAILY FROM DUE DATE |
|---|---|

Date: April 8, 2013

| ABT | ISSUED TO | Fratelli Cosulich LDA | ON | Javier Brito Managing |
| Alabama Bulk Terminals | | 125 Malden Lane Suite 209 | BEHALF OF | Director |
| 195 Cochrane Causeway | | New York New York 10038 | | Specialty Fuels Inc./Specialty |
| Mobile AL 36602 | | | | Fuels Bunkering |

160 St. Emanuel Street
Mobile AL 36602
251 694 9473

| ISSUING DATE | ORDER | UCC ARTICLE 7 DEFINED |
| April 8, 2013 | Custodial Rights to be held in the name | |
| | of Fratelli Cosulich | |

| TANK # LOCATION | DESCRIPTION | | QUANTITY |
| | | | All contents of |
| TK 2 ABT | 12,500 bbls of Fuel Oil MDO with approximate valuation of $1,496,250 USD | | TK 2 |

Signature of
Holdings SFB

EXHIBIT
C

IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

SPECIALTY FUELS BUNKERING, LLC,    )
     )
    Plaintiff,    )
     )
vs.    )
     )
F. JAVIER BRITO, et al,    )
     )
     )  CIVIL ACTION NO.: CV-2012-900676
    Defendant/Counterclaim Plaintiffs,    )
     )
vs.    )
     )
SCOTT CLEVELAND, et al,    )
     )
    Counterclaim Defendants.    )

### Affidavit of F. Javier Brito

Now before the undersigned authority personally appeared F. Javier Brito, and after first being sworn, doth depose and say as follows:

1.    Specialty Fuels Bunkering, LLC was in the business of wholesale supply of fuel products. It operated by buying fuel components, blending them to make specific types of fuel, and then selling the finished fuel product to a buyer. Sometimes it sold fuel without the need to blend. This type of operation required enough capital or credit to be able to purchase the component parts of the fuel, store them, blend them, sell them, deliver the product, and then wait for payment. Included in the cost of doing business was the cost of employees, place of business, professional expense, office expense and other business expenses.

2.    After an initial period of financing, there was a business line of credit issued by Whitney /Hancock Bank. In addition, other alternative financing was sometimes done through private industry. In 2009 Whitney / Hancock expressed concern regarding a write off of monies



**EXHIBIT**

D

owed by MTT / Scott Cleveland in the amount of $ 800,000. Then in early 2011, Whitney /Hancock advised that it would not continue its line of credit to Specialty without personal guarantees and would no longer extend a line of credit to the company because of a $2,000,000.00 A/R from MTT / Scott Cleveland being carried on the balance sheet. (This was a result of MTT/Scott Cleveland withholding $2,000,000.00 intended for Specialty in financing monies sent from a third party) After that time, traditional commercial means of financing were not available to Specialty. Specialty, however, had other means open to it and pursued those although at significantly higher rates.

3.      Specialty has participated in a factoring arrangement to help with its credit and cash flow, but this arrangement cost Specialty significant additional financing costs. In addition, it still did not provide adequate turnaround of funds for cash flow purposes. It was also cumbersome. For instance, when this lawsuit was filed, the factor was forced to pay money into court. This slowed turnaround. Some money still is deposited in this court.

4.      Another alternative form of financing was to "monetize" the fuel products by selling them to a buyer on the promise that Specialty would buy them back at a higher price later or to make wholesale sales with a market discount to the buyer. Monetizing is less common in the industry but is used nonetheless. It is very expensive and requires additional inventory maintenance.

5.      Specialty has engaged in all of these types of alternative financing arrangements to try to continue to do business. They have increased Specialty's borrowing costs substantially.

6.      Even at high borrowing costs, these alternatives are now practically unavailable because Specialty's customers and companies providing financing are increasingly less willing or unwilling to continue to do business with Specialty. This is because of its financial condition

and the uncertainty surrounding its operations.  In addition, banks dealing with the customers or companies providing financing have now prevented those entities from providing their resources to Specialty.

7.      With minimal capital and expensive costs of borrowing, Specialty has been forced into a pattern of performing smaller transactions and fewer transactions.  Smaller transactions can, and have, cut into profit margins since Specialty has missed out on some economies of scale. In addition, Specialty has not had adequate funds to hedge.  Given the volatility of the market, this has resulted in additional profitability issues.

8.      The increased market volatility and a market downturn also reduced transaction volumes which also hurt Specialty's capital and business position.

9.      While Specialty has reduced its costs of providing logistics (such as storage and delivery), it cannot cut these costs any further.

10.     The combination of lower sales volume, smaller transactions, and lower margins on the transactions have reduced the operating income of the company drastically.

11.     Specialty now is operating at a negative equity position.   In other words, its liabilities exceed its assets.  As news of this position and news of this lawsuit spread through the industry, Specialty's traditional customers and financing entities became reluctant to do business with Specialty.

12.     As a result of the setbacks referred to above, Specialty has now become a mere broker of fuels.  It lacks the financial ability to purchase product, handle the logistics, and sell product to customers at a level that will cover the costs of logistics and operations.  As a broker, Specialty cannot cover its own expenses or operational costs. In addition, it is concerned that it will leave more and more companies with bad debts.

3

13.     At this point, Specialty has no cash reserves, no available credit on terms that are viable to the continued operation of the business, and thus no way to continue to operate as it has operated in the past.

14.     Specialty cannot make a profit under these circumstances.

15.     Many of the companies that did business with Specialty, even given the foregoing issues, did so in reliance upon my reputation and relationships in the industry.  In view of the financial situation and uncertainty involving Specialty, they are reluctant to continue.  I cannot assure them that their debts will be paid.

16.     There is uncertainty over who are members of Specialty.  Although I have contended that CCC is not a valid member, the Court has not granted my motion for summary judgment on this issue.  The uncertainty over membership has led to a chaotic and confusing situation.

17.     There is uncertainty over who is the manager.  That is one of many issues in this suit.  The motions of the plaintiffs to replace me have been denied to date; however, the uncertainty has led to a chaotic and confusing situation.

18.     Uncertainty over membership and management has led directly to an inability to make long term plans and commitments.  These are necessary to continue to operate and to deal with the financing issues referred to above.

19.     The motion for summary judgment to have Mr. Cleveland and MTT pay all of their debts to the company was denied.  This included debt that was in addition to the amounts referred to in paragraph 2.  The debts of Mr. Cleveland and MTT are substantial enough that, if paid, Specialty would not be experiencing the significant cash flow and financing issues it now experiences.  Its financial position would improve to a point where financing could be obtained.

4

Although the claim remains pending, the shortfall from the lack of these funds has led to a situation where operations cannot be continued.

20.    Capital contributions by members cannot be compelled under the operating agreement.

21.    In March of 2013, Specialty was provided documentation indicating that its name and financial information had been used by Mr. Ford Graham to fraudulently raise money paid to the attention of Mr. Scott Cleveland. Part of the scheme involved using Specialty's own records. Continuing the business and continuing to provide financial records provides an additional vehicle for this to be done again.

22.    The constant distraction of this litigation also prevents the effective transaction of business. This includes the confusion caused by this litigation. Despite court rulings that have continued the management and operation of Specialty in me, the lawsuit, by its style and alignment, creates confusion in customers and companies that have done business with Specialty.

23.    That persons claiming 52% interest in Specialty are adverse to the business itself results in an inability to coordinate the business and run it smoothly and efficiently.


Further affiant sayeth not.

F. Javier Brito

<u>Acknowledgement</u>

STATE OF ALABAMA
COUNTY OF MOBILE

Before me, the undersigned authority, personally appeared F. Javier Brito, who is known

to me, and stated that the within and foregoing affidavit is true and correct and that he executed

the same voluntarily this ___19th___ day of ___July___, 2013.

NOTARY PUBLIC
Commission expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 30, 2014
BONDED THRU NOTARY PUBLIC UNDERWRITERS

371433

6