## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FRATELLI COSULICH                    :
UNIPESSOAL, S.A.,
f/k/a FRATELLI COSULICH             :
CONSULTADORIA
E PARTICIPACOES                     :
UNIPESSOAL, LDA,
                                    :
     Plaintiff,                     CA 13-00545-KD-C
                                    :
v.
                                    :
SPECIALTY FUELS BTU, LLC;
F. JAVIER BRITO; and BUNKERS        :
INTERNATIONAL CORP.,
                                    :
     Defendants.

## REPORT AND RECOMMENDATION

     This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the motions to dismiss filed by the Defendants, Specialty Fuels BTU, LLC, ("BTU"), F. Javier Brito ("Brito"), and Bunkers International Corp. ("BIC") (docs. 65 and 67), the response filed by the Plaintiff, Fratelli Cosulich Unipessoal, S.A., ("Fratelli") (doc. 73), and the replies filed by the Defendants (docs. 74 and 75).  Upon consideration of the foregoing pleadings, the Magistrate Judge **RECOMMENDS** that BIC's motion to dismiss (doc. 65) be **DENIED** and that BTU and Brito's motion to dismiss (doc. 67) be **GRANTED IN PART** and **DENIED IN PART**, as discussed below.

## I.   Background and Relevant Allegations in the
## Third Amended Complaint ("TAC")

As alleged by the Plaintiff in the TAC (doc. 64), this matter arises from a series of transactions involving the Plaintiff, the Defendants, and former Defendant Specialty Fuels Bunkering, LLC, ("Bunkering").[1]  (*Id.*)

### A.   The Parties.

The Plaintiff is a foreign corporation "engaged, in part, in the business of vessel bunkering and the trading of fuel oil and fuel oil by-products."  (*Id.*, ¶ 1.)  Bunkering and BTU are domestic limited liability companies that "were engaged in the business of wholesale supply of fuel products."  (*Id.*, ¶¶ 2-3, 8.)  Brito allegedly was the controlling member of both Bunkering and BTU.  (*Id.*, ¶ 4.)  According to the TAC, "Brito was the principal founder [and] investor . . . and . . . the disputed managing member of Bunkering," as well as "the principal founder [and] investor . . . and . . . the managing and sole member of BTU."  (*Id.*)  The Plaintiff alleges that Bunkering and BTU

> operated, jointly and/or separately, by buying fuel components, blending them to make specific types of fuel, and then selling the finished fuel or fuel oil by-product to a buyer.  This type of operation required enough capital or credit on the part of Bunkering and BTU to enable each entity to purchase the component parts of the fuel, store them, blend them, sell them, deliver the product and then await payment.  Bunkering and BTU engaged in business in such a manner, and through representations by their representatives and [BIC], that [the Plaintiff] considered them to be essentially the same company, "Specialty",[2] owned, managed and controlled by one person, Brito.

---

[1]        Bunkering was named as a Defendant in the original Complaint (doc. 1).  Subsequently, however, Bunkering filed for Chapter 7 bankruptcy protection, and the Plaintiff chose not to pursue this action against Bunkering in Plaintiff's amended pleadings.  (*See* doc. 30 at 6 ("As the [proposed second amended complaint] deletes Bunkering as a defendant entirely in this action, Bunkering is no longer a party to this action."); doc. 64, ¶ 2.)

[2]        In the TAC the Plaintiff refers to Bunkering and BTU collectively as "Specialty." For ease of reference, the undersigned uses that designation herein.

(*Id.*, ¶ 8.)  BIC is a domestic corporation that served as the exclusive broker for the Plaintiff's transactions with Bunkering and BTU from 2011 onward.  (*Id.*, ¶¶ 5, 10-11.)

## B. BIC's relationship with the Plaintiff and Specialty.

Prior to 2011, the Plaintiff transacted directly with Bunkering and BTU.  (*Id.*, ¶ 9.) Paul Pappaceno handled those transactions on behalf of the Plaintiff.  (*Id.*)  At the time, he was employed by the Plaintiff's agent, Asamar, Inc.  (*Id.*)  However, Pappaceno began working for BIC in late 2010.  (*Id.*, ¶ 10.)

> Shortly thereafter at Pappaceno's urging, he and [the Plaintiff's] management orally agreed that [BIC] would act as [the Plaintiff's] broker for all Bunkering and BTU transactions.
>
> . . . From the time that Pappaceno began working for [BIC] through and including one or both of the transactions that are the subject of this lawsuit, all of [the Plaintiff's] transactions and dealings with Bunkering and BTU were conducted solely through Pappaceno and his employer, [BIC], as broker for [the Plaintiff], and as the exclusive representative of Bunkering, BTU and Brito.
>
> . . . In consideration for these services, [BIC] received monetary commissions from [the Plaintiff] on the transactions.
>
> . . .
>
> . . . During this time frame, Pappaceno, on behalf of [BIC], demanded that [the Plaintiff] not directly contact anyone at Bunkering or BTU which resulted in Pappaceno and [BIC] becoming the sole intermediary and conduit for information between [the Plaintiff] and "Specialty" (Bunkering and BTU).  Because of this insistence, [the Plaintiff] was placed into a position of having to trust that Pappaceno and [BIC] would provide it with timely and accurate information concerning "Specialty's" financial ability to perform on the transactions, among other things.
>
> . . . Over this same considerable time frame, Pappaceno and [BIC], for their own financial gain, cultivated a position of trust and confidence with [the Plaintiff] in its dealings with all of the Defendants . . . by reassuring [the Plaintiff] that they could be trusted and relied upon.

(*Id.*, ¶¶ 10-12, 14-15.)  Specifically, in the course of the Plaintiff's dealings with BIC on transactions with Bunkering and BTU, Pappaceno sent messages to the Plaintiff stating

"[y]ou can trust me" and "[d]on't worry" to assure the Plaintiff that it would receive payment from Bunkering and BTU.  (*Id.*, ¶¶ 15(a)-15(b).)

BIC further established a position of trust and confidence by informing the Plaintiff of its extensive relationship with Bunkering and BTU.  (*Id.*, ¶ 15.)  Specifically, BIC disclosed to the Plaintiff that it had participated in factoring arrangements with Bunkering and BTU, including instances where it paid Bunkering and/or BTU's financial obligations to the Plaintiff.  (*Id.*, ¶ 15(c).)  BIC also informed the Plaintiff that it participated in other independent transactions with Bunkering and BTU where it acted as a principal and bought and sold fuel oil on extended credit terms.  (*Id.*, ¶ 15(e).)  Additionally, Pappaceno informed the Plaintiff that he invested his personal funds in Bunkering and/or BTU.  (*Id.*, ¶ 15(f).)  Based on the aforesaid information conveyed by BIC, the Plaintiff reasonably inferred that BIC "was not engaged in typical broker conduct"; "was privy to detailed financial information about the business operations of Bunkering[,] BTU and Brito"; and "was by its own conduct vouching for Bunkering and BTU's reliability as financially sound and responsible business entities . . . when it solicited [the Plaintiff] to do business with those entities."  (*Id.*, ¶¶ 15(c)-15(f).)

Additionally, BIC conveyed the closeness of its relationship with Brito and "Specialty" by informing the Plaintiff of BIC's direct conversations with Brito regarding the status of payments owed to the Plaintiff.  (*Id.*, ¶ 16.)  Such conduct demonstrated BIC's "apparent, if not actual, insider position with Bunkering and BTU."  (*Id.*)

> Through this conduct and course of dealings over time, [BIC] created and assumed certain duties, including the duty to conduct its brokerage activities with reasonable skill and diligence, the duty to engage in due diligence, and the duty to inform [the Plaintiff], its principal, of material information it acquired through the exercise of reasonable diligence, as a result of its expansive, close individual dealings with Bunkering, BTU and Brito.
>
> . . .

> . . . All of this created a custom and practice over time between [BIC] and [the Plaintiff] and established a course of dealings upon which [the Plaintiff] reasonably relied and placed its trust as was intended by [BIC] and resulted in the creation of a "special" or fiduciary relationship between [the Plaintiff] and [BIC].

(*Id.*, ¶¶ 18-19.)

### C.     The transactions at issue.

Central to this action are two agreements—"STEM 6277" and "STEM 6322"— involving the sale and repurchase of oil.  The Plaintiff describes these transactions "as a close-in-time purchase (by [the Plaintiff]) and sale (by Bunkering or BTU) of oil or fuel oil by-product on the promise that "Specialty" (i.e., Bunkering or BTU, depending on the transaction), would buy the product back at a higher price."  (*Id.*, ¶ 13.)   BIC brokered both agreements.  (*Id.*, ¶ 11, 29.)

Pursuant to the STEM 6277 agreement, on January 11, 2013, the Plaintiff paid BTU $2,828,322.00 for the purchase of 22,447 barrels of cutterstock,[3] and BTU was obligated to purchase those barrels back in thirty days at the price of $2,857,503.10.  (*Id.*, ¶ 29(a).)   Subsequently, BTU requested, and the Plaintiff agreed, to roll over the agreement four times such that the due date for BTU's payment for the repurchase of the fuel-oil was extended into August 2013 and interest was added to the outstanding payment.  (*Id.*)   On July 24, 2013, the Plaintiff received $1,500,000.00 in partial satisfaction of the outstanding debt.  (*Id.*)  However, the remainder has not been paid. Thus, the Plaintiff alleges that it is still owed $1,532,589.70, plus interest, under the STEM 6277 agreement.  (*Id.*)

STEM 6322 involved two payments by the Plaintiff to Bunkering for the purchase of a total of 23,500 barrels of Number 2 diesel fuel, which Bunkering was required to

---

[3]          Cutterstock, apparently, is a fuel-oil product.

purchase back.  (*Id.*, ¶ 29(b).)  Pursuant to the STEM 6322 agreement, on April 22, 2013, the Plaintiff paid Bunkering $1,600,000.00 for a portion of the diesel fuel, and Bunkering was obligated to purchase that portion back in thirty days at the price of $1,616,377.93. (*Id.*)  On May 21, 2013, the Plaintiff paid Bunkering $1,384,500.00 for the remainder of the diesel fuel, and Bunkering was obligated to repurchase that amount in thirty days at the price of $1,398,671.94.  (*Id.*)  As with the STEM 6277 agreement, the STEM 6322 agreement was rolled over multiple times such that the due date for Bunkering's payment was extended to August 2013 and interest was added to the balance.  (*Id.*) However, the Plaintiff received no payments from Bunkering and, therefore, Bunkering owes the Plaintiff $3,092,527.82, plus interest, under the STEM 6322 agreement.  (*Id.*)

Accordingly, the Plaintiff alleges that the grand total that Bunkering and/or BTU owes the Plaintiff under the STEM agreements is $4,625,117.52, plus interest.  (*Id.*, ¶ 30.)

**D.    Warehouse Receipt and status of fuel-based product serving as collateral.**

The Plaintiff alleges that, on April 8, 2013, Bunkering, BTU and Brito "issued a 'Warehouse Receipt' to [the Plaintiff] to lead [the Plaintiff] to believe that [the Plaintiff] had and maintained a right to possess the product at issue as security for the debt evidenced by the invoices."  (*Id.*, ¶ 49.)  Additionally, three days later, BIC represented to the Plaintiff that the Plaintiff's transactions with Specialty were secured by fuel oil. (*Id.*, ¶ 57(k)-(l).)

The Plaintiff alleges that the Warehouse Receipt was false and misleading and that the Plaintiff's accounts were not, in fact, secured by fuel-based product.  (*Id.*, ¶¶ 49, 57(l), 61.)[4]  Thus, the Plaintiff alleges that the Defendants misrepresented that fuel oil

---

[4]    The undersigned notes that the Plaintiff also alleges elsewhere in the TAC that the transactions were secured by fuel-based collateral.  (Doc. 64, ¶ 13.)  The Plaintiff's inconsistent pleading is permissible.  *See* Fed. R. Civ. P. 8(d); *Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. of DC*, No. 11-61577-CIV, 2011 WL 3843931, at *3 (S.D. Fla. Aug. 26, 2011).

secured the transactions at issue and failed to disclose the true status of that collateral. (*Id.*, ¶¶ 64, 74.)

### E.    Specialty's financial condition.

The Plaintiff alleges that Specialty's financial condition began deteriorating in May 2012.  "On May 29, 2012, Bunkering commenced litigation against Brito in the Circuit Court of Baldwin County, Alabama, in which other members of Bunkering sought, among other things, to wrest control of Bunkering from Brito."  (*Id.*, ¶ 23.)  Due to the management dispute involved in that lawsuit, Bunkering could not meet its financial obligations.  (*Id.*, ¶ 24.)  In June 2012, Brito filed pleadings in the Baldwin County matter representing that

> Bunkering's financing sources, . . . including [BIC], were not being paid and that Bunkering's customers' ships or vessels were at risk of seizure by [BIC];
>
> Bunkering was losing the trust and good will of its customers thereby damaging Bunkering's ability to do business in the future;
>
> Bunkering's relationship with [BIC] (a finance source) was being "irreparably damaged"; [and]
>
> Bunkering's ability to conduct business in general was being "irreparably damaged[.]"

(*Id.*)  The Plaintiff alleges that BIC was aware of the Baldwin County litigation and the financial difficulties that had "irreparably damaged" its relationship with Bunkering. (*Id.*, ¶ 25.)  The Plaintiff further alleges that Bunkering's financial difficulties "worsened over time such that the ability of Bunkering and BTU to do business as normal became materially impaired," (*id.*, ¶ 26), and that BIC knew that Bunkering's and BTU's financial condition was deteriorating, (*id.*, ¶ 27).  "On April 29, 2013, Brito filed a Motion for Judicial Dissolution as to Bunkering in the [Baldwin County] litigation based on allegations of financial misconduct, misappropriation and waste."  (*Id.*, ¶ 32.)

On or about July 19, 2013, Brito filed an affidavit executed by him in support of his . . . Motion for Judicial Dissolution . . ., in which he testified that "Specialty [i.e., Bunkering] [was] operating at a negative equity position . . . its liabilities exceed[ed] its assets. . . . Specialty ha[d] no cash reserves, no available credit on terms that are viable to the continued operation of the business and thus ha[d] no way to operate as it ha[d] operated in the past."

(*Id.*, ¶ 46.)

The Plaintiff alleges that, despite the foregoing, the Defendants failed to disclose Specialty's precarious financial condition and misrepresented that Specialty was financially sound.  (*Id.*, ¶¶ 64, 74.)

**F.   Claims asserted in the TAC.**

The Plaintiff asserts thirteen counts in the TAC.  (Doc. 64.)  In Counts I and II, the Plaintiff asserts breach of contract claims against BTU, only.  (*Id.* at 30-31.)  In Count III, the Plaintiff asserts fraudulent misrepresentation claims against all the Defendants pursuant to sections 6-5-101 and 6-5-103 of the Code of Alabama.  (*Id.* at 31-43.)  In Count IV, the Plaintiff asserts fraudulent suppression claims against all the Defendants pursuant to section 6-5-102.  (*Id.* at 43-49.)  In Count V, the Plaintiff asserts fraudulent deceit claims against all the Defendants pursuant to section 6-5-104.  (*Id.* at 49-55.)  In Count VI, the Plaintiff asserts fraud in the inducement claims against all the Defendants.  (*Id.* at 55-58.)  In Count VII, the Plaintiff asserts fraud in insolvency claims against BTU and Brito pursuant to section 13A-9-48 of the Code of Alabama.  (*Id.* at 58-65.)  In Counts VIII-IX, the Plaintiff asserts negligence and wantonness claims against BIC.  (*Id.* at 65-73.)  In Counts X-XI, the Plaintiff asserts breach of fiduciary duty claims against BIC.  (*Id.* at 73-81.)  In Count XII, the Plaintiff asserts that the corporate veil should be pierced as to Bunkering and BTU so that the Plaintiff may recover against Brito personally.  (*Id.* at 82-84.)  In Count XIII, mislabeled as Count XI, the Plaintiff asserts a claim for injunctive relief against BTU and Brito.  (*Id.* at 84-87.)

BTU and Brito moved to dismiss Counts IV and VII for failure to state a claim, and moved to strike Count VI as redundant.[5]  (Doc. 67.)  BIC moved to dismiss all Counts asserted against BIC (Counts III-VI, VIII-XI) for failure to state a claim.  (Doc. 65.)  Counts I, II, XII and XIII are not addressed in the motions to dismiss and, thus, they are not discussed herein.

## II.  Motion to Dismiss Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Iqbal v. Ashcroft*, 556 U.S. 662, 677-678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in Twombly, . . . the

---

[5]      BTU and Brito indicate in one sentence on the first page of their motion to dismiss that Count VI should be dismissed for failure to state a claim.  (Doc. 67, ¶ 1.)  However, in their brief they provide no argument regarding the dismissal of Count VI for failure to state a claim and failed to even reassert the statement made on the face of their motion.  (Doc. 67-1.)  The only discussion of Count VI relates to their argument that it should be stricken as redundant of other claims.  (*Id.* at 5.)  Accordingly, with respect to Count VI, the undersigned construes BTU and Brito's motion as asserting the redundancy argument, only.

pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1955).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id*. at 678-679, 129 S. Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. at 680, 129 S. Ct. at 1950-1951 (a plaintiff must nudge his claims "'across the

line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

## III.   Discussion

### A.     The TAC meets basic pleading requirements.

BIC first argues that, as a general matter, the TAC does not contain enough factual allegations to meet the facial plausibility pleading standard explained in *Iqbal* and *Twombly*.  (Doc. 65 at 2-3.)  The undersigned disagrees.  With respect to BIC, the Plaintiff asserts fraud, breach of fiduciary duty, negligence and wantonness claims.  The 87-page and 164-paragraph TAC, with 20 pages of attached exhibits, contains more than enough facts to show that those claims are plausible on their face.  (*See* doc. 64.)  The Plaintiff alleges numerous facts to explain (1) the transactions at issue in this case through which the Plaintiff lost millions of dollars; (2) BIC's involvement in those transactions as the Plaintiff's broker and agent; (3) the duties BIC owed to the Plaintiff arising from their working relationship and course of dealings; and (4) BIC's breach of those duties through its alleged misrepresentations and suppression of material facts, among other things.  (*See id.*)  The Plaintiff's claims are discussed in more detail below, but the TAC clearly contains plausible claims with much more than conclusory statements or threadbare recitals of the elements of a cause of action.

BIC next argues that the TAC violates Rule 8(a)(2) and Rule 8(d)(1).  (Doc. 65 at 3-5.)  Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule

8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).   While the TAC is somewhat sprawling, with some paragraphs appearing repetitive and unnecessary, the undersigned acknowledges that the length and repetition is due, in part, to the fact that the Plaintiff has restated certain allegations to cure shotgun pleading deficiencies in the Second Amended Complaint.  (*Compare* doc. 64, *with* doc. 31.)   In the Court's Order granting the Plaintiff leave to file its Proposed Second Amended Complaint ("PSAC"), United States District Judge Kristi K. DuBose noted that

> the PSAC is a "shotgun pleading," as it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . ." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). The Eleventh Circuit greatly disfavors such pleadings, *see, e.g., id.* . . . However, having reviewed the PSAC, the Court does not find it confusing on its face and will not *sua sponte* deny amendment on this basis.

(Doc. 30 at 7-8.)  After the Plaintiff filed the Second Amended Complaint (doc. 31), the Defendants filed motions for a more definite statement (docs. 46 and 49), and the Plaintiff, subsequently, filed the TAC to clarify its claims.  The undersigned agrees with the Plaintiff that, at this point, its claims are sufficiently clear.  The TAC gives BIC fair notice of the Plaintiff's claims "and the grounds upon which [they] rest,"[6] such that it allows BIC to frame a responsive pleading.  Accordingly, the undersigned finds that the TAC complies with the pleading requirements of Rule 8.

**B.    The Plaintiff's claims against BIC are properly asserted in tort.**

BIC argues that all claims Plaintiff asserts against it—fraud, breach of fiduciary duty, negligence and wantonness—arose from their contract and, thus, those claims

---

[6]    *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (observing that Rule 8(a)(2) requires that the pleading "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))).

"must be dismissed insofar as the allegations therein assert a cause of action sounding

in tort but based on a contract."  (Doc. 65 at 6.)  The undersigned disagrees.

> It is well settled in Alabama that "a mere failure to perform a contractual
> obligation is not a tort." *Barber v. Business Products Center, Inc.,* 677 So. 2d
> 223, 228 (Ala. 1996)[, *overruled on other grounds by White Sands Group, L.L.C
> v. PRS II, LLC,* 32 So. 3d 5, 14 (Ala. 2009)]. It is also true, however, that
> Alabama courts have recognized exceptions to this rule. *See, e.g., Powers v.
> CSX Transp., Inc.,* 190 F. Supp. 2d 1284, 1295 (S.D. Ala. 2002) (collecting
> cases). The Eleventh Circuit has construed Alabama law on this point as
> providing that, while ordinary breach of contract does not constitute a
> tort, "[i]t is possible for a tort to arise in Alabama out of a breach of a duty
> implied by or arising out of a contract." *Brown-Marx Associates, Ltd. v.
> Emigrant Sav. Bank,* 703 F.2d 1361, 1371 (11th Cir. 1983); *see also Hamner v.
> Mutual of Omaha Ins. Co.,* 270 So. 2d 87, 90 (Ala. Civ. App. 1972) (similar).
> The *Brown-Marx* panel distinguished between claims for breach of an
> obligation expressly set forth in the contract (which are not actionable in
> tort under Alabama law) and claims for breach of a duty implied by or
> arising out of the contract (which may be actionable in tort). *See Brown-
> Marx,* 703 F.2d at 1371.

*Hardy v. Jim Walter Homes, Inc.*, Civil Action No. 06-0687-WS-B, 2008 WL 906455, at *14

(S.D. Ala. April 1, 2008) (footnote omitted).   *See Eastern Shore Marine, Inc. v. M/V

Mistress*, 717 F. Supp. 790, 792 (S.D. Ala. 1989) ("If a cause of action arises from a breach

of a promise, the action is *ex contractu*; if it arises from a breach of a duty which grows

out of the relationship of the parties because of the contract, the action is in the form *ex

delicto*. . . . Therefore, a contract for the performance of an act which contains no

contractual provision that the act will be done in a proper manner or free from

negligence, by law, creates a duty but does not imply a contract, that the act will be

done in a proper manner when its performance is undertaken, and a breach of this

legally created duty will give rise to an action *ex delicto*." (citing *C & C Products, Inc. v.

Premier Indus. Corp.*, 275 So. 2d 124, 129-30 (Ala. 1972)); *Brooks v. Hill*, 717 So. 2d 759, 763

(Ala. 1998) ("[W]here the parties have entered into a contract, if the cause of action

arises from a breach of duty arising out of the contract, rather than from a breach of a

promise of the contract itself, the claim is *ex delicto*." (citations omitted)); *Sanford v. W.

*Life Ins. Co.*, 368 So. 2d 260, 263 (Ala. 1979) (concluding that the plaintiff's fraud claim sounded in tort even though it arose from a contract because "the contract merely establishes the relationship from which such a legally imposed duty could spring." (citations omitted)); *Great N. Land & Cattle Inc. v. Firestone Tire & Rubber Co.*, 337 So. 2d 1323, 1327-28 (Ala. Civ. App. 1976) ("When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty—But does not imply a contract—to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is No express or implied contract which is breached." (citations and internal quotation marks omitted)); *see also Mechler v. John Hancock Life Ins. Co.*, Civil Action No. 07-0724-CB-M, 2008 WL 4493230, at *4 (S.D. Ala. Sept. 30, 2008) (concluding that, under Alabama law, the plaintiff could pursue tort actions for fraud and fraudulent suppression against insurer, where the defendant argued that said tort claims were foreclosed because they arose from a breach of the terms of the insurance policy).

In *Hardy* this Court, applying Alabama law, considered whether plaintiffs could bring tort claims arising from a Purchase and Sale Agreement for the construction of a house. *Hardy*, 2008 WL 906455, at *1-2. The plaintiffs, the purchasers of the home, asserted negligence actions against the builder for its failure to apply for construction permits, failure to communicate with the plaintiffs regarding the construction status, and failure to begin construction in a timely manner. *Id.* at *13. The builder moved for summary judgment on the negligence claims arguing that the plaintiffs improperly transformed breach of contract claims into tort claims. *Id.* at *14. This Court rejected the builder's argument, noting that the builder had not identified any provision in the contract requiring the builder to perform the acts at issue. *Id.* This Court concluded that, "[b]ecause [the plaintiffs'] negligence claims concern duties arising from the

Purchase and Sale Agreement rather than breach of express contractual obligations in that agreement, . . . [those] claims are cognizable in tort under Alabama law." *Id.*

In this case, the Plaintiff asserts fraud, breach of fiduciary duty, negligence and wantonness claims against BIC. (Doc. 64 at 31-81.)  The Plaintiff alleges, among other things, that BIC misrepresented and failed to disclose Specialty's financial condition and that BIC acted negligently and recklessly when it vouched for Specialty and failed to advise the Plaintiff as to Specialty's financial troubles.  (*Id.*)  The Plaintiff's claims are firmly grounded in tort, even more so than in *Hardy*, because the claims here involve duties arising primarily from the circumstances of the working relationship between the parties.  *See infra* § III.C.4.a.  While the relationship between the Plaintiff and BIC arose, in part, from the oral agreement whereby BIC agreed to serve as the Plaintiff's broker, it is clear from the TAC that the Plaintiff's claims did not arise from a breach of a specific promise in a contract with BIC.  The only reference in the TAC to the agreement between the Plaintiff and BIC is the allegation that "[Pappaceno] and [Plaintiff]'s management orally agreed that [BIC] would act as [Plaintiff]'s broker for all Bunkering and BTU transactions." (Doc. 64, ¶ 10.)  Like the defendant in *Hardy*, BIC has pointed to no provisions of the agreement with the Plaintiff imposing the duties alleged by the Plaintiff in the TAC.  (Doc. 65 at 5-6.)

Furthermore, in *Ex parte Certain Underwriters at Lloyd's of London*, the Alabama Supreme Court analyzed this issue by considering the distinction between nonfeasance and misfeasance and looking to the gravamen of the complaint.  *See Ex parte Certain Underwriters at Lloyd's of London*, 815 So. 2d 558, 562-63 (Ala. 2001) ("The theory on which the cases have been decided is often difficult to discern, but basically [it] may be stated that if there is [a] failure or refusal to perform a promise the action is in contract; if there is a negligent performance of a contractual duty or the negligent breach of a

duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or [in] tort. In the latter instance, whether the action declared is in tort or [in] contract must be determined from the gist or gravamen of the complaint. *Basically, the line of division between [an action in contract and an action in] tort in such instances is [the line between] nonfeasance and misfeasance.*" (quoting *Hamner*, 270 So. 2d at 90-91)).   Applying that analysis to this case, the undersigned has confirmed that the Plaintiff's claims against BIC are properly asserted in tort.   First, the allegations in the TAC present a case of misfeasance, as opposed to nonfeasance, because the Plaintiff alleges that, while BIC brokered numerous transactions with Specialty, as agreed by the parties, BIC handled those transactions in a wrongful manner.   Second, the gravamen of the Plaintiff's claims against BIC sounds in tort.   As discussed above, the Plaintiff alleges that BIC violated duties imposed by law based on the relationship between the parties.   (Doc. 64 at 31-81.)   The only reference to an agreement between the parties is found in a single paragraph of the 164-paragraph TAC.   (*Id.*, ¶ 10.)

**C.      Misrepresentation, suppression, deceit and fraud in inducement claims (Counts III-VI).**

**1. With respect to Counts III-VI the Plaintiff has satisfied the heightened pleading requirements of Rule 9(b).**

BIC argues that the fraud claims asserted against BIC do not meet the heightened pleading standard of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b). [7]

---

[7]      BIC also argues that the Plaintiff's fraud claims fail to meet the pleading requirements of Rule 9(f); however, BIC fails to clearly articulate this argument or distinguish it

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

*Ziemba v. Cascasde Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). However, the application of this rule "must not abrogate the concept of notice pleading." *Id.* (citation and internal quotation marks omitted). Furthermore, "[t]here is no 'one size fits all' checklist for satisfying [the Rule 9 pleading] requirement. *Claybar v. Huffman*, 54 F. Supp. 3d 1284, 1288 (S.D. Ala. 2014) (citing *Tello v. Dean Witter Reynolds, Inc.*, 494 F. 3d 956, 972–73 (11th Cir. 2007) ("While allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, we have acknowledged that alternative means are also available to satisfy the rule in substantiating fraud allegations."); *Mechler*, 2008 WL 4493230, at *3 ("Plaintiffs' fraud/fraudulent suppression claim could be better pled; however, the complaint, taken as a whole, sufficiently alerts the defendant to the misconduct with which it is charged.")).

After reviewing Counts III-VI, the undersigned concludes that the Plaintiff has met the Rule 9 pleading requirements. With respect to the misrepresentation claim, the

---

from BIC's argument under Rule 9(b). (Doc. 65 at 6-7.) Rule 9(f) provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). The only case cited by BIC with regard to Rule 9(f) is *Micor Indus., Inc. v. C2JS Holdings, Inc.*, in which the Northern District of Alabama briefly summarized the allegations in the complaint before it and found that it satisfied the requirements of Rules 9(b) and 9(f). *Micor Indus.*, Civil Action No. 12-S-02654-NE, 2012 WL 5931707, at *7 (N.D. Ala. Nov. 26, 2012). The court in *Micor Indus.* did not conduct any discussion of Rule 9(f) or otherwise provide support for BIC's assertion that the TAC does not comply with that Rule. In any event, "pleadings that are specific enough to satisfy Rule 9(b) are also specific enough to satisfy Rule 9(f)." *Orix Real Estate Capital Markets, LLC v. Superior Bank, FSB*, 127 F. Supp. 2d 981, 986 (N.D. Ill. 2000). Thus, because the undersigned finds below that the TAC complies with Rule 9(b), the undersigned also finds that the TAC does not run afoul of Rule 9(f).

Plaintiff alleges, in paragraph 57 of the TAC, that BIC misrepresented Specialty as being financially sound.  (Doc. 64, ¶ 57.)  Paragraph 57 contains numerous subparagraphs setting forth multiple representations with varying degrees of particularity.  Although certain subparagraphs do not contain clear statements described with particularity, some statements are alleged with sufficient detail.  For example, the Plaintiff alleges that, on February 6, 2013, Pappaceno sent the Plaintiff an instant message stating, with respect to Specialty, that "Business is good," and that "[Specialty] should have [the Plaintiff's] invoice paid within 10 business days."  (*Id.*, ¶ 57(i) (emphasis omitted).)[8]  Additionally, the Plaintiff alleges that BIC misrepresented the status of fuel oil securing the Plaintiff's transactions with Specialty when, on April 11, 2013, Pappaceno sent the Plaintiff an instant message proposing that the Plaintiff enter into another purchase agreement with Specialty and stating that the purchase "gives [the Plaintiff] title to fuel."  (*Id.*, ¶ 57(k) (emphasis omitted).)  The Plaintiff alleges that it relied on those statements when it continued to transact business with Specialty, including rolling over Specialty's debts, and that, as a result of those transactions, the Plaintiff lost millions of dollars.  (*Id.*, ¶ 65-66.)  Furthermore, the Plaintiff alleges that, as a consequence of BIC's fraud, "[BIC] was able to secure millions of dollars worth of extended credit from [the Plaintiff] for Bunkering and BTU and secure brokerage commissions for itself."  (*Id.*, ¶ 63.)  The Plaintiff alleges that "[BIC] may have also lessened direct financial risk to itself for any credit which it may have extended to Bunkering and BTU during the same time period by securing for Bunkering and BTU the ability to perform debt service to [BIC] through the receipt of funds provided by [the Plaintiff]."  (*Id.*)  Based on these allegations, and considering the TAC as a whole, the undersigned finds that the Plaintiff

---

[8]     BIC also argues that these statements do not constitute misrepresentations of material facts.  That issue is discussed below.  *See infra* § III.C.2.

has satisfied the Rule 9 pleading standard. *See Claybar*, 54 F. Supp. 3d at 1288 ("Examining the Second Amended Complaint *in toto,* the Court readily concludes that it adequately pleads the circumstances constituting the alleged fraud for Rule 9(b) purposes. . . . In light of those particularized factual allegations, no viable argument can be made that defendants have not been alerted to the 'precise misconduct with which they are charged,' . . . which is, after all, the purpose of the particularity rule."). Although the Plaintiff failed to identify Pappaceno's location when he made the aforementioned statements, (*see* doc. 64, ¶ 57), that detail is unnecessary given that Pappaceno's statements were transmitted electronically and the Plaintiff alleged numerous other details that alert BIC to the misconduct charged. *See Claybar*, 54 F. Supp. 3d at 1288 n.4 ("That the pleading does not enumerate 'where it was made' is not fatal to the sufficiency of Count IV. Again, the Rule 9(b) requirement that fraud be pleaded with particularity is not a rigid, inflexible checklist.").

The undersigned likewise finds that the Plaintiff has met the Rule 9 pleading standard with respect to its suppression, deceit, and fraudulent inducement claims found in Counts IV, V and VI. Those fraud claims are essentially variations of the misrepresentation claim arising from the same events. (*See* doc. 64, ¶ 74 (alleging that BIC "suppress[ed] material facts . . . as to (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral"); *id.*, ¶ 85 (alleging that BIC deceived the Plaintiff when it "intentionally misrepresented . . . (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral"); *id.*, ¶¶ 90-92 (alleging that BIC fraudulently induced the Plaintiff to continue to transact business with Specialty and roll over debts when BIC misrepresented (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product

serving as security or collateral").)   BIC has failed to demonstrate how the TAC provides inadequate notice of those claims.

### 2.   Misrepresentation and deceit claims against BIC (Counts III and V).

The Plaintiff's misrepresentation and deceit claims are brought pursuant to sections 6-5-101, 6-5-103, and 6-5-104 of the Code of Alabama.  (Doc. 64 at 31-43, 49-55.)  Section 6-5-101 provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  Ala. Code § 6-5-101 (1975).  Sections 6-5-103 and 6-5-104 address actions for deceit.  Pursuant to section 6-5-103,

> [w]illful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

§ 6-5-103.[9]  Furthermore, section 6-5-104 provides as follows:

> (a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

> (b) A deceit within the meaning of this section is either:

>> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

>> (2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

---

[9]      The undersigned notes that, although section 6-5-103 provides for an action for deceit, the Plaintiff refers to that section within Count III in which the Plaintiff asserts a claim for misrepresentation.  (Doc. 64, ¶ 66.)  As stated below, actions for misrepresentation and deceit are very similar.

> (3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

> (4) A promise made without any intention of performing it.

§ 6-5-104.

"The elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was reasonably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Bryant Bank v. Talmage Kirkland & Company, Inc.*, 155 So. 3d 231, 238 (Ala. 2014) (citations omitted). A claim for deceit

> is extremely similar to [a misrepresentation claim], except that "a[n] action for deceit, under . . . § 6-5-103 and § 6-5-104, results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead," *Whitlow v. Bruno's Inc.*, 567 So. 2d 1235, 1241 (Ala. 1990), while an action for misrepresentation of material fact can be based on an unintentional misrepresentation. [§ 6-5-101].

*Montgomery Rubber & Gasket Co. v. Belmont Machinery Co.*, 308 F. Supp. 2d 1293, 1299 (M.D. Ala. 2004).

With respect to the Plaintiff's misrepresentation and deceit claims, BIC asserts the same argument—that the Plaintiff failed to allege a misrepresentation of a material fact. (*See* doc. 65 at 10, 15.)

> [A] misrepresentation requires an affirmative statement or misrepresentation. *Mann v. Adams Realty Co.*, 556 F.2d 288, 296 (5th Cir. 1977). . . . The representation normally must be of a present fact not a future fact, *Sly v. First National Bank*, 387 So. 2d 198 (Ala. 1980)[,] nor an opinion, promise, or prophesy, *Fidelity & Casualty Co. v. J. D. Pittman Tractor Co.*, 244 Ala. 354, 358, 13 So. 2d 669 (1943), unless the statement was expressed such that the other person may reasonably treat it as a fact, *id.* at 358, 13 So. 2d at 672, or if "there are circumstances tending to show fraudulent intent at the time of the promise or representation," *Ringer v. First National Bank*, 291 Ala. 364, 368, 281 So.2d 261, 265 (1973).

> . . .

Whether a given representation is an opinion or a fact "depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties." *Fidelity & Casualty Co.* [], 244 Ala. [at] 358, 13 So. 2d [at] 672 []. When parties deal at arm's length and the recipient of a statement is not fraudulently induced to forbear inquiries that a competent person would make for his own protection, "expressions of opinion as to matters which lie in opinion merely—opinions as to current market values furnishing the most common example—" will not be grounds for a misrepresentation claim because the recipient, knowing the nature of such expressions, has no right to rely on them. *Id.* Even an opinion on value is actionable, however, if the recipient states his ignorance and invites the opinion, and the speaker understands the recipient relies on the speaker's opinion as a fact so that the onus of a confidential relation results: if the recipient forbears independent inquiry because of an opinion elicited under these circumstances of confidence, Alabama courts will treat the statement as a fact reasonably relied upon. *Id.*

*Kaye v. Pawnee Const. Co., Inc.*, 680 F.2d 1360, 1367-68 (11th Cir. 1982) (footnote omitted);

*see Bryant Bank*, 155 So. 3d at 239-40 (citing *Kaye*, 680 F.2d at 1368).

As discussed above, the Plaintiff alleges that BIC misrepresented that Specialty was financially sound and able to pay the Plaintiff when it stated that "[b]usiness is good" and that "[Specialty] should have [the Plaintiff's] invoice paid within 10 business days." (*Id.*, ¶ 57(i) (emphasis omitted).) [10] The Plaintiff also alleges that BIC

---

[10]    "Under Alabama law a misrepresentation of financial condition can be actionable." *Ringer*, 281 So. 2d at 264.

"An unbending rule can not be laid down for all cases, where, upon the representations of an uninterested person, one trusts another, and suffers loss. Much must depend on the circumstances of the particular case. But when, as in this case, the person recommending knows that the object of the party procuring the recommendation is to obtain credit at a distance; knows that the proposed seller is unacquained with the financial condition and credit of the proposed buyer, the law, in harmony with good morals and good neighborhood, requires that the same shall be faithfully and truthfully given. A representation, as fact, of that which the party knows to be false; or, of that, of the truth of which he has no knowledge or well-founded belief, falls below the standard of legal requirement. And if it turn out in fact that the representation is false, and the seller is deceived and suffers loss in consequence of the sale he made on the strength of it, the party recommending must make good the loss. . . ."

*Id.* (quoting *Einstein, Hirsch & Co. v. Marshall & Conley*, 58 Ala. 153 (1877)).

misrepresented that fuel oil served as collateral securing the Plaintiff's accounts with Specialty when BIC stated that entering into the STEM agreements with Specialty "gives [the Plaintiff] title to fuel."   (*Id.*, ¶ 57(k) (emphasis omitted).)   Standing alone, these statements appear that they could be mere opinions rather than representations of fact.   However, when viewed in conjunction with all the circumstances of this case, the Court could ultimately determine that these statements should be treated as facts.   *See Ringer*, 281 So. 2d at 265 ("[A] representation of an opinion or a prediction of a future event can be an actionable fraud, but such opinions or predictions are not actionable unless 'there are circumstances tending to show an actual fraudulent intent at the time of the promise or representation' is made." (quoting *Scholz Homes, Inc. v. Hooper*, 254 So. 2d 328, 332-33 (Ala. 1971)); *Scholz Homes*, 254 So. 2d at 332 ("[I]t is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. . . . If the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact, for he impliedly states that he knows facts which justify his opinion." (quoting *Shepherd v. Kendrick*, 181 So. 782, 784 (Ala. 1938)); *Fidelity & Casualty Co.*, 13 So. 2d at 672 ("Whenever a person states a matter which might otherwise be only an opinion, not as a mere expression of his own opinion but as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, the statement clearly becomes a statement of fact.").

Here, the Plaintiff alleges that BIC was in a position of superior knowledge regarding Specialty's business operations and that BIC knew that the Plaintiff relied on its statements when making determinations as to whether to transact business with

Specialty.  (Doc. 64, §§ 14-16, 57-59, 80-84.)[11]  Furthermore, the Plaintiff alleges that BIC knew the statements were untrue when it made them and that BIC made them with a fraudulent intent to induce the Plaintiff to continue transacting business with Specialty. (Doc. 64, §§ 23-25, 60-64, 85.)  Therefore, when viewed within the context of the entire TAC, the undersigned cannot find that the Plaintiff has not sufficiently alleged misrepresentations of material[12] facts.  *See Ringer*, 281 So. 2d at 263-64 (finding that, within the context of all the circumstances alleged, the representation that a potential buyer is "better and more dependable" could be sufficient to be given to the jury, provided that the allegations were supported by the evidence); *Mason & Dixon Lines, Inc. v. Byrd*, 601 So. 2d 68, 72-73 (Ala. 1992) (concluding that the representations that one party would give "100 percent support" and that equipment would be available were properly considered by the jury within the context of the other facts of the case).

The Plaintiff also alleges that BIC's misrepresentations were willful, intentional and reckless,[13] that the Plaintiff reasonably relied on BIC's representations when it continued to transact business with Specialty and rolled over its agreements, and that it sustained significant financial losses as a result.  (Doc. 64, ¶¶ 64-66, 85-87.)  Therefore,

---

[11]    For example, the Plaintiff alleges that BIC had a close relationship with Specialty amounting to an "apparent, if not actual, insider position"; that BIC insisted that the Plaintiff trust and rely on BIC's representations regarding Specialty; and that the Plaintiff not contact Specialty directly.  (Doc. 64, §§ 14-16.)

[12]    As alleged, the facts at issue were clearly material. "A material fact is one which would induce the plaintiff to take action," *Lawson v. Cagle*, 504 So. 2d 226, 227 (Ala. 1987) (citing *Bank of Red Bay v. King*, 482 So. 2d 274, 282 (Ala. 1985)), and the Plaintiff alleges that BIC's misrepresentations "induced [the Plaintiff] to provide credit terms exceeding several millions of dollars and to roll over that indebtedness." (Doc. 64, ¶ 60.)

[13]    BIC argues that the Plaintiff has not alleged any facts showing that BIC's alleged misrepresentations were made willfully or recklessly.  (Doc. 65 at 11.)  The Plaintiff, however, need not allege additional facts to demonstrate knowledge, willfulness or recklessness on the part of BIC.  Such allegations may be made generally.  Fed. R. Civ. P. 9(b).

the undersigned finds that the Plaintiff has stated a plausible claim for misrepresentation. *See Bryant Bank*, 155 So. 3d at 238.[14]  Because the Plaintiff also alleges that BIC made the aforesaid misrepresentations with the intent to mislead and induce the Plaintiff to continue to transact business with Specialty, (doc. 64, §§ 80-81, 85), the Plaintiff has stated a plausible claim for deceit.[15]  *See* § 6-5-104(a); *Whitlow*, 567 So. 2d at 1241.  Accordingly, the undersigned **RECOMMENDS** that BIC's motion to dismiss be denied with respect to Plaintiff's misrepresentation and deceit claims.

### 3.  Fraud in the inducement claim against BIC, BTU and Brito (Count VI).

The Defendants all argue that the Plaintiff's fraud in the inducement claim should be stricken or dismissed for being redundant of the Plaintiff's misrepresentation and deceit claims.  (Doc. 65 at 16; doc. 67-1 at 5.)  First, the undersigned notes that the Defendants improperly seek the dismissal of Count VI on redundancy grounds.  "[M]otions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid."  *Wichael v. Wal-Mart Stores East, LP*, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014) (citing *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03

---

[14]    BIC, relying on *Dewitt Apparel, Inc. v. F.D.I.C.*, Civil Action No. 94-1009-AH-M, 1996 U.S. Dist. LEXIS 8593, at *21 (S.D. Ala. June 7, 1996), argues that the Plaintiff has failed to make a sufficient showing of fraud.  (Doc. 65 at 11.)  However, in *Dewitt Apparel* the Court considered a motion for summary judgment and determined whether the plaintiff had produced substantial *evidence* supporting the elements of its fraud claim.  *Dewitt Apparel*, 1996 U.S. Dist. LEXIS 8593, at *21.  Thus, the Court's analysis in *Dewitt Apparel* is not applicable to the determination of whether the Plaintiff in this case has failed to state a claim.

[15]    The undersigned also notes that, even if the Plaintiff failed to sufficiently allege a material misrepresentation of fact, the Plaintiff's deceit claim would still survive based on the allegations that BIC suppressed information regarding Specialty's financial condition with the intent to mislead the Plaintiff, (doc. 64, ¶¶ 79-88).  *See* § 6-5-103 ("Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action."); § 6-5-104 ("A deceit within the meaning of this section [includes] . . . [t]he suppression of a fact by one who is bound to disclose it."); *Whitlow*, 567 So. 2d at 1241 ("An action for deceit . . . results from . . . a suppression of material facts with an intent to mislead.").

Civ. 15(RWS), 2007 WL 1687044, at *10 (S.D.N.Y. June 11, 2007)); *see id.* (finding that a duplicative negligence claim cannot be dismissed for being redundant).   Thus, the Defendants' motions with respect to Count VI are properly understood as motions to strike pursuant to Fed. R. Civ. P. 12(f).   Rule 12(f) provides that "[t]he court *may*[16] strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added).

> The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matter. A court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. Because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.

*Principal Bank v. First American Mortgage, Inc.*, No. 2:10-cv-190-FtM-29DNF, 2014 WL 1268546, at *1 (M.D. Fla. Mar. 27, 2014) (internal citations, quotation marks, and brackets omitted)); *see also TracFone Wireless, Inc. v. Zip Wireless Products, Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010) ("Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process. Motions to strike are generally viewed with disfavor and are often considered time wasters. A motion to strike is a drastic remedy to be resorted to only when required for the purposes of justice . . . and should be granted only when the pleading to be stricken has no possible relation to the controversy." (internal citations, quotation marks, and brackets omitted)).   Indeed, stated more succinctly, "[i]n addressing a Motion to Strike, 'a court will not exercise its discretion . . . unless **the matter sought to be omitted** has no possible relationship to the controversy, may

---

[16]   "The Court has broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f)." *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1360 (S.D. Fla. 2009) (citations omitted).

confuse the issues, or otherwise prejudice a party.'" *Hepp v. Paul Revere Life Ins. Co.*, No. 8:13-CV-02836-EAK-TBM, 2014 WL 3865389, at *7 (M.D. Fla. Aug. 5, 2014) (emphasis supplied); *see also Tracfone Wireless, Inc. v. Access Telecom, Inc., supra*, 642 F. Supp. 2d at 1361 (""A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" (citations omitted)).

In support of their motion to strike the Plaintiff's fraud in the inducement claim, asserted in Count VI, the Defendants solely argue that the elements of that claim mirror the elements of the Plaintiff's misrepresentation and deceit claims. (Doc. 65 at 16; doc. 67-1 at 5.) The Defendants assert no argument that Count VI somehow prejudices the Defendants, that it confuses the issues, or that it has no relation to this controversy, (doc. 65 at 16; doc. 67-1 at 5), and the undersigned's review of Count VI reveals that it does not suffer from those flaws. While the undersigned acknowledges that the fraud in the inducement claim is very similar to the Plaintiff's misrepresentation and deceit claims,[17] the similarity of claims in the TAC does not warrant the drastic remedy sought. Accordingly, the undersigned **RECOMMENDS** that the Defendants' motions to dismiss or strike Plaintiff's fraud in the inducement claim be denied.[18]

---

[17]     Indeed, "[a] claim of fraudulent inducement under Alabama law is similar to one of misrepresentation." *Whitney Bank v. Murphy*, Civil Action No. 11-00614-KD-M, 2013 WL 1191235, at *11 (S.D. Ala. Mar. 22, 2013).

[18]     The undersigned notes that BIC also argues in a single sentence that Plaintiff's fraud in the inducement claim fails for the same reasons that Plaintiff's misrepresentation, suppression and deceit claims are due to be dismissed. (Doc. 65 at 16.) However, as discussed herein, the undersigned finds that Plaintiff's misrepresentation, suppression and deceit claims are sufficiently stated and are *not* due to be dismissed. Therefore, the undersigned rejects this undeveloped argument from BIC.

### 4.   Suppression claims against BIC, BTU and Brito (Count IV).

The Plaintiff alleges that BIC, BTU and Brito concealed and suppressed material facts in violation of section 6-5-102 when they failed to disclose facts "as to (a) the true state of the financial condition of Bunkering and BTU and (b) the status of fuel based product serving as security or collateral."  (Doc. 64, ¶ 74.)  Section 6-5-102 provides as follows: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." § 6-5-102.   "The elements of a suppression claim are '(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury.'"  *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan,* 682 So. 2d 61, 63 (Ala. 1996)).

BIC, BTU and Brito have all moved to dismiss the Plaintiff's suppression claim on the grounds that there are no allegations supporting a duty to disclose.  (Doc. 65 at 12-14; doc. 67-1 at 1-3.)  The undersigned first considers this argument with respect to BIC.

### a.   Suppression claim against BIC.

To adequately allege a duty to disclose, the Plaintiff must allege facts upon which that duty may arise.  *See Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *9-10 (N.D. Ala. Dec. 12, 2014); *Shedd v. Wells Fargo Home Mortgage, Inc.*, Civil Action No. 14-00275-CB-M, 2014 WL 6451245, at *5 (S.D. Ala. Nov. 17, 2014).

> A duty to disclose often arises when there is a confidential or fiduciary relationship between the parties. [*Ellis v. Zuck*, 409 F. Supp. 1151, 1157 (N.D. Ala. 1976), *aff'd*, 546 F.2d 643 (5th Cir. 1977).] The Alabama courts do not seem to focus on the "designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the

parties." *Id.* (citing [*Hall Motor Co. v.*] *Furman,* 234 So. 2d [37,] 41 [(Ala. 1970)], *Metropolitan Life Ins. Co. v. James,* 238 Ala. 337, 191 So. 352 (1939)) (*cited with approval in Jim Walter Homes, Inc. v. Waldrop,* 448 So. 2d 301, 305 (Ala. 1983) (per curiam)); *Jim Short Ford Sales*[*, Inc., v. Washington*], 384 So. 2d [83,] 87 [(Ala. 1980)].[19] Even when a confidential relationship between the parties does not exist, the particular circumstances of a situation can give rise to an obligation to disclose. *Mann* [*v. Adams Realty Co.*], 556 F.2d [288,] 297 [(5th Cir. 1977)]; [§ 6–5–102]. When the accused has superior knowledge or expertise not shared by the plaintiff, the obligation to disclose is compelling. *Mann,* 556 F.2d at 297 (citing *Chapman v. Rivers Constr. Co.,* 284 Ala. 633, 227 So. 2d 403, 410–13 (1969)); *Ellis,* 409 F. Supp. at 1157–58. In order to determine whether a duty to disclose exists, we must examine the facts of each individual case; "a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." *Jim Short Ford Sales,* 384 So. 2d at 87. Finally, even if one is not under a duty to speak, if he decides to do so, "he must make a full and fair disclosure," without concealing any facts within his knowledge. *Ellis,* 409 F. Supp. at 1158 (citing *Jackson Co. v. Faulkner,* 55 Ala. App. 354, 315 So. 2d 591 (1975)).

*First Ala. Bank of Montgomery, N.A. v. First State Ins. Co.,* 899 F.2d 1045, 1059 (11th Cir. 1990).

After reviewing the TAC, the undersigned has concluded that the Plaintiff has alleged facts giving rise to a confidential and fiduciary relationship between the Plaintiff and BIC, triggering a duty to disclose.  The Alabama Supreme Court has defined a confidential or fiduciary relationship as follows:

A confidential relationship is one in which one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence

---

[19]     *Jim Walter Homes* and *Jim Short Ford Sales* were overruled on other grounds by *State Farm Fire and Casualty Co. v. Owen,* 729 So. 2d 834, 838-42 (Ala. 1998), where the Alabama Supreme Court held that the duty to disclose is a question of law to be determined by the Court. *Id.* ("[W]e hereby overrule that line of cases that gives to the jury the responsibility of determining the existence of a duty on the defendant's part.").

acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*DGB, LLC v. Hinds*, 55 So. 3d 218, 231-32 (Ala. 2010) (quoting *Bank of Red Bay*, 482 So. 2d at 284) (internal quotation marks omitted).

The Plaintiff alleges that BIC was the Plaintiff's exclusive broker and agent with respect to its dealings with Specialty, (doc. 64, §§ 15(c), 18, 71); that BIC "insisted that [the Plaintiff] not contact 'Specialty' directly and required [the Plaintiff] to use [BIC] as the sole intermediary between the parties," (*id.*, ¶72(g)); that, consequently, the Plaintiff bec[a]me dependent and reliant on [BIC] for all current and accurate information" as to whether Specialty was financially able to perform the transactions at issue, (*id.*); that BIC informed the Plaintiff of BIC's independent dealings with Specialty, including transactions involving extended credit arrangements, which suggested to Plaintiff that Specialty was financially reliable, (*id.*, ¶¶ 72(c)-(d)); that BIC communicated directly with Brito regarding Specialty's transactions, further demonstrating BIC's superior position of knowledge and leading the Plaintiff to place more confidence and trust in BIC, (*id.*, ¶ 16); and that when the Plaintiff directed inquiries to BIC regarding Specialty's ability to make payments, BIC advised the Plaintiff not to worry and reminded the Plaintiff that it could trust BIC, (*id.*, ¶ 72(a)-(b)).  Based upon this alleged course of dealings, the Plaintiff has sufficiently alleged a fiduciary or confidential relationship between the Plaintiff and BIC.  *See Express Oil Change, LLC v. ANB Ins. Services, Inc.*, 933 F. Supp. 2d 1313, 1351-52 (N.D. Ala. 2013) (finding that a confidential relationship existed between the plaintiff and its insurance broker when the broker "inspired confidence in [the plaintiff] that [it] would act in good faith for its interests").  Furthermore, the Plaintiff has adequately alleged that BIC owed a duty to disclose arising from their fiduciary or confidential relationship.  *See Hinds*, 55 So. 3d at 231-34

(concluding that the plaintiffs sufficiently alleged that the defendants owed a duty to disclose arising from their confidential and fiduciary relationship with the defendants when they alleged, among other things, that they "entrusted [the defendants] with the negotiation of [the transaction] based on [the defendants'] superior experience and knowledge"); *State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So. 2d 472, 474-76 (Ala. 1977) (holding that an insurer owed a duty to disclose arising from its confidential relationship with the plaintiff where the plaintiff developed trust and confidence in his insurer through their course of dealings in which the insurer made assurances that it would take care of the plaintiff's interests).

Moreover, even if a confidential relationship did not arise from the alleged facts, the undersigned finds that a duty to disclose on the part of BIC could arise from the particular circumstances of this case.  When determining whether a duty arises under the particular circumstances of a case, the court shall consider the following factors: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."  *Freightliner*, 932 So. 2d at 891 (quoting *Armstrong Bus. Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 677 (Ala. 2001)) (internal quotation marks omitted).

The first four factors identified in *Freightliner* all weigh in favor of finding a duty, should the proof ultimately support the Plaintiff's allegations.[20]  The relationship of the parties weighs in favor of finding a duty because the Plaintiff alleges that BIC is the Plaintiff's exclusive broker and agent, that Pappaceno had handled the Plaintiff's transactions with Specialty for several years and that Pappaceno and BIC fostered a

---

[20]     The parties have not provided the Court with any information regarding the customs of the trade with respect to this issue. Therefore, the undersigned cannot make a determination as to whether the fifth factor supports a duty in this case.

relationship whereby the Plaintiff trusted and relied on Pappaceno and BIC's representations regarding Specialty.  The knowledge of the parties supports the finding of a duty because the Plaintiff has alleged that BIC had far superior knowledge based on its direct access to Specialty's business operations and BIC's insistence that the Plaintiff not contact Specialty.  Similarly, the Plaintiff was less likely to ascertain the facts at issue because BIC had established that the Plaintiff's inquiries regarding Specialty should be directed to BIC.  The value of the facts at issue—Specialty's financial instability and the lack of collateral securing transactions with Specialty—supports the finding of a duty because the Plaintiff alleges that, had it known those facts, it would have ceased doing business with Specialty and immediately sought to collect the funds owed.  Thus, the circumstances of this case could give rise to a duty to disclose the information at issue.  *See First Ala. Bank of Montgomery*, 899 F.2d at 1059 (concluding that, despite the fact that the plaintiff was a sophisticated financial institution, its insurer owed a duty to disclose under the particular circumstances of the case, including the insurer's superior knowledge regarding the dealings at issue); *Independent Life & Accident Ins. Co. v. Harrington*, 658 So. 2d 892, 896-97 (Ala. 1995) (concluding that, under the circumstances of the case, including the plaintiff's reliance on the defendant's superior knowledge, the defendant owed a duty to disclose).

Because the Plaintiff has alleged that BIC had a duty to disclose Specialty's poor financial condition and the lack of fuel oil securing plaintiff's transactions with Specialty, that BIC failed to disclose those facts, that BIC solicited the Plaintiff to enter into purchase agreements with Specialty, and that the Plaintiff sustained serious financial losses as a result of those transactions, the Plaintiff has stated a claim against BIC for suppression.  Therefore, the undersigned **RECOMMENDS** that BIC's motion to dismiss should be denied with respect to Plaintiff's suppression claim.

**b. Suppression claim against BTU and Brito.**

With respect to BTU and Brito, the Plaintiff did not allege a confidential relationship or special circumstances giving rise to a duty on the part of BTU and Brito to disclose its poor financial condition or the status of fuel oil securing the purchase agreements with the Plaintiff. (*Compare* doc. 64, ¶ 72, *with id.*, ¶¶ 68-77.) Furthermore, the Plaintiff asserts no argument in that regard.[21] (*See* doc. 73 at 22-23.) Instead, the Plaintiff argues that BTU's and Brito's duty to disclose arose from a criminal statute— section 13A-9-48 of the Code of Alabama. (Doc. 73 at 23.) As discussed below, the Plaintiff's reliance on a criminal statute is unconvincing. While the Plaintiff concedes that section 13A-9-48 does not give rise to a private right of action, it argues that the statute, nevertheless, imposes a duty satisfying a critical element in the Plaintiff's fraudulent suppression claim brought pursuant to section 6-5-102. (Doc. 73 at 23.) The Plaintiff provides no authority supporting this argument, and the undersigned does not find it persuasive. *See infra* § III.D.

Nevertheless, the undersigned finds that a duty for BTU and Brito to disclose the facts at issue could arise from BTU and Brito's alleged misleading representations. *See CNH Am., LLC v. Ligon Capital, LLC*, --- So. 3d ----, 1111204, 2013 WL 5966782, at *5 (Ala. Nov. 8, 2013) ("'[O]nce a party elects to speak, he or she assumes a duty not to suppress or conceal those facts that materially qualify the facts already stated.'" (quoting *Freightliner*, 932 So. 2d at 895)). The Plaintiff alleges that, by May 2012, Specialty's financial condition was deteriorating, (doc. 64, ¶¶ 23-24); that, in July 2012, while the Plaintiff was touring Specialty's facilities in Mobile, Alabama, BTU and Brito

---

[21]     The undersigned notes that, "'[w]hen the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested.'" *Freightliner*, 932 So. 2d at 892 (citing *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995)).

represented to the Plaintiff that their business was growing, (*id.*, ¶ 22); that, on May 10, 2013, during a meeting at BTU's office in Mobile, BTU and Brito represented to the Plaintiff that they were financially sound and that business was proceeding as usual, (*id.*, ¶¶ 41-42); and that, at that time, Specialty was in financial distress, (*id.*, ¶¶ 32, 46).[22] Thus, based on the allegations in the TAC, the Court could determine that, by making the aforesaid representations, BTU and Brito assumed a duty to disclose facts regarding Specialty's alleged deteriorating financial condition.[23] Similarly, the Court could determine that BTU and Brito assumed a duty to inform the Plaintiff as to the lack of fuel oil securing their transactions when they sent the Plaintiff the April 8, 2013 Warehouse Receipt, which, allegedly, was false and misled the Plaintiff into believing that fuel oil served as collateral for their repurchase agreements, (*id.*, ¶¶ 49, 57(l)). Accordingly, the allegations in the TAC support the duty to disclose element of the Plaintiff's suppression claim with respect to BTU and Brito.  BTU and Brito make no other argument with respect to Plaintiff's suppression claim, (doc. 67-1 at 1-3), and the undersigned finds that said claim is sufficiently stated in the TAC.  Thus, the

---

[22]    Specifically, the Plaintiff alleges that, "[o]n April 29, 2013, Brito filed a Motion for Judicial Dissolution as to Bunkering . . . based on allegations of financial misconduct" and, on July 19, 2013, Brito filed an affidavit in support of that motion in which he stated that

"Specialty [i.e., Bunkering] [was] operating at a negative equity position . . . its liabilities exceed[ed] its assets. . . . Specialty ha[d] no cash reserves, no available credit on terms that are viable to the continued operation of the business and thus ha[d] no way to operate as it ha[d] operated in the past."

(Doc. 64, ¶¶ 32, 46.)  On November 14, 2013, Bunkering filed for bankruptcy protection.  (*Id.*, ¶ 2.)

[23]    The undersigned notes that "[the Alabama Supreme Court] has recognized[] [that] the law generally allows a business to keep confidential its internal operating procedures and data unless that information is specifically requested."  *Freightliner*, 932 So. 2d at 892 (citing *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 787 (Ala. 1997)).  However, as stated above, the moment a party speaks it "assumes a duty not to suppress or conceal those facts that materially qualify the facts already stated."  *Id.* at 895.

34

undersigned **RECOMMENDS** that BTU and Brito's motion to dismiss be denied with respect to Plaintiff's suppression claim.

**D.**     **Plaintiff's "Fraud in Insolvency" Claim (Count VII) against BTU and Brito should be dismissed because there is no private right of action under the criminal statute that BTU and Brito allegedly violated.**

In Count VII, the Plaintiff alleges that, by concealing their insolvency, BTU and Brito violated section 13A-9-48 of the Alabama Criminal Code.   (Doc. 64 at 58-65.) Specifically, the Plaintiff states that it "claims a private right of action against BTU and/or Brito for violation of [that section]."   (*Id.*, ¶ 113.)   However, "[o]ne claiming a private right of action within a statutory scheme must show clear and convincing evidence of legislative intent to impose civil liability for a violation of the statute." *Liberty Nat'l Life Ins. Co. v. Univ. of Ala. Health Serv. Found., P.C.*, 881 So. 2d 1013, 1025 (Ala. 2003) (quoting *Blockbuster, Inc. v. White*, 819 So. 2d 43, 44 (Ala. 2001)) (internal quotation marks and other citations omitted); *accord Woods Knoll, LLC v. City of Lincoln, Ala.*, 548 F. App'x 577, 581 (11th Cir. 2013).

Section 13A-9-48 is a criminal statute that provides as follows:

**§ 13A-9-48. Fraud in insolvency.**

(a) A person commits the crime of fraud in insolvency if, with the intent to defraud a creditor and with knowledge or reason to believe either that proceedings have been or are about to be instituted for the appointment of a receiver or that a composition agreement or other arrangement for the benefit of creditors has been or is about to be made, he:

(1) Conveys, transfers, removes, conceals, destroys, encumbers or otherwise disposes of any part of or any interest in the debtor's estate; or

(2) Presents to any creditor or to the receiver any writing or record relating to the debtor's estate, not otherwise within the coverage of Sections   13A-10-101, 13A-10-102 or 13A-10-109,   knowing   or having reason to believe that it contains a false material statement; or

(3) Misrepresents or refuses to disclose to the receiver, under circumstances not amounting to a violation of Section 13A-10-4, the existence, amount or location of any part of or an interest in debtor's estate, or any other information that he is legally required to furnish to the administrator.

(b) "Receiver" means an assignee or trustee for the benefit of creditors, a conservator, a liquidator or any other person legally entitled to administer property for the benefit of creditors.

(c) Fraud in insolvency is a Class B misdemeanor.

Ala. Code § 13A-9-48 (1975).  The language of the statute provides no indication that the Legislature intended to create a private right of action, or otherwise impose civil liability, *id.*, and the Plaintiff has made no showing regarding the Legislature's intent, (*see* doc. 64 at 58-65; doc. 73 at 23).

In *Dysart v. Trustmark Nat'l Bank*, the Northern District of Alabama considered a motion to dismiss a claim for "deed forgery" asserted pursuant to a criminal forgery statute, section 13A-9-3, found within the same chapter of the Criminal Code—Chapter 9 (Forgery and Fraudulent Practices)—that contains the fraud in insolvency statute. *Dysart v. Trustmark Nat'l Bank*, No. CV-13-BE-2092-S, 2014 WL 1765120, at *11-12 (N.D. Ala. Apr. 30, 2014).  After reviewing the plaintiff's deed forgery claim, the Northern District found that

[the plaintiff] is attempting to assert a violation of a criminal statute, § 13A–9–3(a)(1) in [a] civil case. . . . However, the Alabama statute upon which she relies appears to be designed for the protection of the public, and no language in it indicates that it creates a private right of action. [The plaintiff's] reliance on the criminal statute to create a private right of action is misplaced. *See Linda R.S. v. Richard* [*D*]., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Love v. Delta Air Lines,* 310 F.3d 1347, 1352–53 (11th Cir. 2002) ([concluding that ][c]riminal statutes generally do not provide a private cause of action[]); *Gibson v. Gains,* [No. 05-15997,] 2006 WL 858336[, at *3] (11th Cir. [April 4,] 2006) (finding that "to the extent that [the plaintiff] raises criminal allegations against the defendants, [he] lacks standing to raise such claims and the district court properly dismissed them.").

Accordingly, the motions to dismiss are due to be GRANTED WITH PREJUDICE as to [the deed forgery] claim against all Defendants.

*Id.* at 12.

Like the forgery statute in *Dysart*, the fraud in insolvency statute "appears to be designed for the protection of the public" without any imposition of civil liability through a private right of action. *Compare* § 13A–9–3, *with* § 13A-9-48. Furthermore, the Plaintiff has not provided the Court with any authority demonstrating that a fraud in insolvency claim is actionable in Alabama, (*see* doc. 73 at 23),[24] and the undersigned has not found any support for such a claim. Accordingly, the undersigned finds that the Plaintiff has not stated a plausible claim for fraud in insolvency. *See Liberty Nat'l*, 881 So. 2d at 1025 (concluding that the plaintiff could not bring a private action for an alleged breach of a statutory provision where the plaintiff failed to show that the statutory provision implied or created a private right of action); *see also Chen ex. rel. V.D. v. Lester*, 364 F. App'x 531, 536 (11th Cir. 2010) ("Criminal statutes generally do not provide a private cause of action. . . . Because these are all criminal statutes, the district court did not err in dismissing those claims." (citation omitted)); *Muhammad v. Bethel-Muhammad*, Civil Action No. 11-0690-WS-B, 2012 WL 1854315, at *7 (S.D. Ala. May 21, 2012) ("'We have been quite reluctant to infer a private right of action from a criminal prohibition alone. . . .'" (quoting *Central Bank v. First Interstate Bank, N.A.*, 511 U.S. 164, 190, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994)). As such, the undersigned **RECOMMENDS** that BTU and Brito's motion to dismiss be granted with respect to

---

[24]     The Plaintiff cites *Rawlings v. Dovenmuehle Mort., Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999), and *Gowens v. Tys. S. ex rel. Davis*, 948 So. 2d 513, 527-28 (Ala. 2006), for the general proposition that "a legal duty may arise from statute." (Doc. 73 at 23.) However, the Plaintiff fails to discuss meaningfully the statute at issue or provide any authority relating to the claim Plaintiff seeks to assert. (*Id.*)

Plaintiff's fraud in insolvency claim (Count VII) and that said claim be dismissed with prejudice.

### E. Negligence, wantonness and breach of fiduciary duty claims against BIC (Counts VIII-XI).

BIC argues that the Plaintiff's negligence, wantonness and breach of fiduciary duty claims fail because they arise in contract, rather than tort.  (Doc. 65 at 16-18.)  This argument has already been rejected above.  *See supra* § III.B.  As previously discussed, the Plaintiff claims that BIC breached duties arising from its relationship with the Plaintiff and course of dealings over multiple years.  (*See* doc. 64, ¶¶ 14-20.)  The Plaintiff does not allege that BIC violated a promise contained within a contract with the Plaintiff.  (*See* doc. 64 at 65-81.)  Accordingly, the Plaintiff's negligence, wantonness and breach of fiduciary duty claims do not fail for being brought as tort claims.  *See, e.g.*, *Hardy*, 2008 WL 906455, at *14.

BIC also argues that the Plaintiff has not alleged sufficient facts to support a fiduciary relationship between BIC and the Plaintiff.  (Doc. 65 at 17-18.)  That argument was rejected above as well.  *See supra* § III.C.4.a. (citing *Express Oil Change*, 933 F. Supp. 2d at 1351-52; *DGB*, 55 So. 3d at 233-34; *Hinds*, 55 So. 3d at 231-34).  Therefore, the undersigned **RECOMMENDS** that BIC's motion to dismiss be denied with respect to Counts VIII-XI.

### IV.   Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that BIC's motion to dismiss (doc. 65) be **DENIED** and that BTU and Brito's motion to dismiss (doc. 67) be **GRANTED IN PART** and **DENIED IN PART**.  BTU and Brito's motion should be granted with respect to Plaintiff's fraud in insolvency claim (Count VII), which should

be **DISMISSED WITH PREJUDICE** for failure to state a claim.  Their motion should be **DENIED** in all other respects.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 4th day of June 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**